No. 47,706

MARVIN G. BROWN, SR., et al., *Appellants,* v. WICHITA STATE UNIVERSITY, et al., *Appellees.* MIKE BRUCE, et al., *Appellants,* v. WICHITA STATE UNIVERSITY, et al., *Appellees.* HALLIE EUGENIA ROBINSON, Individually and as the Administratrix of the Estate of Eugene Robinson, et al., *Appellants,* v. WICHITA STATE UNIVERSITY, PHYSICAL EDUCATION CORPORATION, INC., *Appellee.*

(538 P. 2d 713)

Opinion filed July 17, 1975.

*John W. Norman,* of Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, of Oklahoma City, Oklahoma, argued the cause, and *Ronald D. Heck,* of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, and *David W. Kennedy,* of Greene & Kennedy, of Wichita, were with him on the brief for appellants.

*Wayne Coulson,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from an order of the district court sustaining a motion for summary judgment.

The controversy arises from the crash of a chartered aircraft carrying members of the 1970 Wichita State University football team, members of the faculty and university supporters. The plaintiff-appellants are either surviving passengers or personal representatives of those killed in the crash. Defendant-appellee, Wichita State University Physical Education Corporation, is a nonprofit, nonstock corporation organized under the laws of the state of Kansas. This corporation was formed to conduct the business and other transactions of the intercollegiate athletic programs of Wichita State University. The chronology of events giving rise to this action follows:

On July 21, 1970, an Aviation Services Agreement was executed by Golden Eagle Aviation, Inc., and Wichita State University for the period commencing September 11, 1970, and ending November 14, 1970—the scheduled 1970 football season. The agreement was executed by Bruce J. Danielson on behalf of Golden Eagle, and by

Bert Katzenmeyer, Athletic Director of Wichita State University, on behalf of that institution. It was attested to by Floyd W. Farmer, Secretary of Wichita State University Physical Education Corporation, Inc. The agreement was attached to the opinion in a companion case, *Brown v. Wichita State University*, 217 Kan. 279, 540 P. 2d 66.

Under the terms of the agreement, Golden Eagle was to provide a qualified flight crew and other ancillary services for the aircraft to be used by Wichita State University in transporting the members of its football team and other personnel to scheduled games at other universities. Wichita State University was to lease the aircraft described in the agreement as "One Douglas DC-6B" from a third party and to provide passenger liability insurance as prescribed by federal regulations.

On Friday, October 2, 1970, members of the Wichita State University football party departed Wichita, Kansas, in two Martin 404 aircraft for Logan, Utah, for a football game with Utah State University scheduled for Saturday, October 3, 1970.

When the Martin 404 aircraft, No. N464M, took off from Denver, Colorado, an intermediate stop, it was 2,900 pounds in excess of the allowable taking-off weight as prescribed by aircraft specifications of the Federal Aviation Administration. (1 Nat'l. Trans. Safety Bd., 1028 [1971].) The plane crashed into a mountainside near Silver Plume, 16 miles west of Georgetown, Colorado.

The registered owner of the plane that crashed was Jack Richards Aircraft Company, Inc. No written agreement had been executed with respect to the lease of the plane to Wichita State University for this flight. Written agreements leasing aircraft of Jack Richards to Wichita State University for the first two away games of the 1970 football season had been signed by Mr. Katzenmeyer on behalf of the University. Those leases had been executed prior to each flight.

Golden Eagle Aviation, Inc., and Jack Richards Aircraft Company, Inc., were organized pursuant to the corporate laws of the state of Oklahoma. The record indicates that as a result of an investigation into the operation of Golden Eagle occasioned by the plane crash, Golden Eagle's air taxi/commercial operator certificate was revoked by the Federal Aviation Administration. That revocation was sustained on appeal by the National Transportation Safety Board. (1 Nat'l. Trans. Safety Bd., 1028 [1971].)

After the plane crash, it was ascertained Wichita State University

had not purchased the passenger liability insurance as required in its contract with Golden Eagle. Liability insurance requirements for air taxi operators engaged in transportation are set by regulations of the Civil Aeronautics Board. (14 C. F. R. 298.41 *et seq.* Subpart D.) The minimum limits of liability coverage are seventy-five thousand dollars ($75,000) for any one passenger, and for each occurrence an amount equal to the sum produced by multiplying $75,000 by seventy-five percent (75%) of the total number of passenger seats in the aircraft. (14 C. F. R. 298.42 [a] [1].)

Three separate lawsuits were filed. Each lawsuit involved multiple plaintiffs and named as defendants Wichita State University and the Wichita State University Physical Education Corporation, Inc. The plaintiffs alleged several causes of action sounding in both tort and contract. The three lawsuits were consolidated by the district court.

On December 26, 1972, defendant Wichita State University filed a motion for summary judgment which was granted by the district court. On appeal to this court, in *Brown v. Wichita State University,* supra, we reversed and remanded. In so doing, K. S. A. 46-901, 902 were struck down as unconstitutional because they granted immunity to state governmental entities for both governmental and proprietary acts. As a result, Wichita State University, a state institution, could be liable for its proprietary acts. This court took judicial notice that intercollegiate football, as presently carried on, is big business—a commercial activity which is a principal source of athletic income at many universities—and is a proprietary function. Likewise, that the transporting of football players to an away intercollegiate football game is also a proprietary function. The governmental immunity protecting Wichita State University from plaintiffs' tort claims was thereby removed. This court further held that Wichita State University Physical Education Corporation was a mere instrumentality of the University, and the acts of the corporation were, therefore, the acts of the University. We held the provisions of K. S. A. 1974 Supp. 76-721 requiring Board of Regents' approval of university contracts did not render the executed and partially performed Aviation Service Agreement invalid.

On May 4, 1974, prior to our decision in *Brown v. Wichita State University,* supra, defendant Wichita State University Physical Education Corporation moved for summary judgment, and the district court sustained the motion. Plaintiffs perfected an appeal, and the propriety of the district court's action is now before us.

The district court in its journal entry, after introducing the parties and their counsel, simply stated:

"The Court, having heard the arguments of counsel and being duly advised in the premises, it is

"ORDERED that the motion be sustained and that the action be dismissed at the cost of the plaintiffs."

In reviewing the case, this court is handicapped by the lack of any indication by the district court as to what were the genuine issues upon which the case was decided.

The appellants suggest:

"While defendant raised several points in its motion for summary judgment, plaintiffs are unable to tell this Court on what basis the trial court ruled in defendant's favor. The only comment made by the trial court at the time of the ruling was that he 'just personally' didn't think the University or the appellee could be held liable in this case. Because of the trial court's lack of specificity in sustaining the motion, plaintiffs will discuss each of the points raised below. . . ."

This does not leave an appellate court much to work on when the validity of a summary judgment is challenged on the basis that genuine issues of material fact exist. In *Scott v. Day and Zimmerman, Inc.*, 216 Kan. 458, 532 P. 2d 1111, it was said:

". . . By its own terms 60-252 (*a*) exempts summary judgment from its requirement that the trial judge state the controlling facts, this, of course, for the reason rendition of summary judgment is improper if the controlling facts are in dispute (it has been said that findings may well be helpful in making clear the basis for the trial court's decision and in indicating what that court understood to be the undisputed facts on which summary judgment was granted [9 Wright & Miller, Federal Practice and Procedure: Civil § 2575, pp. 692-693]). . . ." (l. c. 459.)

Rule 116 of this court relating to appellate practice is broader than Section 60-252 (*a*) in that it requires in all contested matters submitted to a judge without a jury, the judge shall, in addition to stating the controlling facts required by 60-252, briefly state the legal principles controlling his decision. (*Duffin v. Patrick*, 212 Kan. 772, 512 P. 2d 442.) It may be said that the entering of summary judgment is also a contested matter and that when considered with Section 60-256 (*d*) the district court should state what it considers to be the controlling facts and the legal principles upon which summary judgment was granted. Otherwise, this court upon appellate review will be required to explore and consider every possible legal theory which may be said to be involved in the summary judgment. Judges of a court of record, unlike a jury which may render an unreasoned decision in a general ver-

dict, must, under our statute and Rule 116, "go on the line," so to speak, and render a "reasoned decision"—that is, assign reasons for the decision rendered.

On many occasions this court has announced the rules governing summary judgments under the provisions of K. S. A. 60-256.

In one of our earlier cases, *Herl v. State Bank of Parsons,* 195 Kan. 35, 403 P. 2d 110, we stated:

"On the hearing of a motion for summary judgment there should be no attempt to resolve conflicting questions of fact. The party who moves for a summary judgment has the burden of establishing without a doubt that there is no genuine issue of fact (*Warner v. First National Bank of Minneapolis,* 236 F. 2d 853, certiorari denied, 352 U. S. 927, 77 S. Ct. 226, 1 L. Ed. 2d 162). Any doubt as to the existence of such an issue is resolved against the movant (*Zampos v. United States Smelting Refining and Min. Co.,* 206 F. 2d 171). The pleadings are to be liberally construed in favor of the party opposing the motion (*Purity Cheese Co. v. Frank Ryser Co.,* 153 F. 2d 88). He is to be given the benefit of all reasonable inferences to be drawn from the evidentiary matter and all facts asserted by the party opposing the motion and supported by affidavits or other evidentiary material must be taken as true. . . ." (l. c. 37.)

In *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964 we warned that a summary judgment proceeding is not a trial by affidavits or depositions, and the parties must always be afforded a trial where there is a good faith dispute over the facts; a plaintiff cannot be compelled to submit his evidence in the form of affidavits in resistance to a motion for a summary judgment and have the issues determined by such motion. In the opinion it was said:

"A mere surmise or belief, no matter how reasonably entertained, that a party cannot prevail upon a trial, will not justify refusing him his day in court with respect to material issues which are not clearly shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them. It must be shown conclusively that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. (*Ford v. Luria Steel & Trading Corp.,* 192 F. 2d 880 [8th Cir. 1951].)

"A summary judgment upon motion of the defendant should therefore never be entered except where the defendant is entitled to its allowance beyond all doubt, and only where the conceded facts show the defendant's rights with such clarity as to leave no room for controversy, with all reasonable doubts touching existence of a genuine issue as to a material fact resolved against the movant, and giving the benefit of all reasonable inferences that may reasonably be drawn from the evidence to the party moved against. (*Realty Investment Co. v. Armco Steel Corp.,* 255 F. 2d 323 [8th Cir. 1958].) (l. c. 211, 212.)

In *Secrist v. Turley,* 196 Kan. 572, 412 P. 2d 976, this court stated:

"In the final analysis a court should not determine the factual issues on a motion for summary judgment but should search the record for the purpose of

determining whether a factual issue exists. If there is a reasonable doubt as to the existence of a material fact a motion for summary judgment will not lie. No matter how the explanation of the rule is phrased we always return to the language of the rule, there must be left 'no genuine issue of any material fact.'

"The proper application of the rule leaves but two rather simple questions for determination, *i. e.*, what is a 'genuine issue' and what is a 'material fact?' The answer as to what constitutes a 'genuine issue as to any material fact' appears to account for most of the voluminous opinions on the question.

"It may be said that an issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. . . ." (l. c. 575.)

We have continued to hold that before summary judgment may be granted the record must show that there remains no genuine issue as to a material fact. *Kern v. Miller*, 216 Kan. 724, 533 P. 2d 1244; *Essmiller v. Southwestern Bell Tel. Co.*, 215 Kan. 74, 524 P. 2d 767; *Vaughn v. Murray*, 214 Kan. 456, 521 P. 2d 262; *Sly v. Board of Education*, 213 Kan. 415, 516 P. 2d 895; *Weber v. Southwestern Bell Telephone Co.*, 209 Kan. 273, 497 P. 2d 118; *Harter v. Kuntz*, 207 Kan. 338, 485 P. 2d 190.

In passing, we note the rule as announced in *Ebert v. Mussett*, 214 Kan. 62, 519 P. 2d 687. There, it was said:

"Generally, summary judgment may be granted when the record before the court shows conclusively there remains no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. A mere surmise or belief on the part of the trial court that a party cannot prevail upon a trial will not warrant summary judgment if there remains a dispute as to a material fact. A material fact is one on which the controversy may be determined. . . ." (l. c. 65.)

The record indicates the district judge granted summary judgment because he "'just personally' didn't think the [defendants] could be held liable." Such a surmise or belief on the part of the district court will not warrant a summary judgment. It may well be the district court believed the basis for its sustaining Wichita State University's motion for summary judgment, *i. e.*, that K. S. A. 46-901, 902 barred the plaintiffs' tort claims, and that K. S. A. 1974 Supp. 76-721 rendered by the Aviation Services Agreement invalid because it was not approved by the Board of Regents, was equally applicable to the appellee's motion for summary judgment in the instant case.

The appellants' petitions pleaded causes of action sounding in both tort and contract. The tort claims are based on the theories of negligence, breach of express and implied warranties and strict liability. Plaintiffs specifically pleaded the crash was "caused by

the negligence, carelessness, wrongful and unlawful acts of the defendants, by their authorized agents, servants and employees in the operation, control, maintenance and leasing of said civil aircraft." The contract claims are based upon the third party beneficiary doctrine and relate to the failure of defendants to procure passenger liability insurance as required by the Aviation Services Agreement and pertinent federal aviation regulations.

On the state of the record before us it cannot be said as a matter of law that Golden Eagle was an independent contractor. Conflicting inferences may be drawn from the facts presented which make the matter appropriate for the trier of fact. Even if it is determined Golden Eagle was an independent contractor, plaintiffs' recovery against Wichita State University is not necessarily precluded. Several factual questions, including but not limited to the following, bear on this issue which should be developed at a trial: whether Wichita State University was negligent in its selection of Golden Eagle; whether agents of Wichita State University and Golden Eagle were concurrently negligent in causing the plane crash, and whether Golden Eagle, Wichita State University, or both, were responsible for the plane being 2,900 pounds overweight upon take off at Denver. See, 1 Nat'l Trans. Safety Bd., 1028 (1971).

Turning to plaintiffs' contractual claims, it may be said the contract, on its face, appears to be clear and unambiguous and its terms not subject to alteration by parol evidence. As indicated, Golden Eagle was certified as an air taxi operator and was required by pertinent regulations to procure liability insurance as such operator. The fact it had not been certified as a commercial operator of large aircraft to engage in the carriage of persons for compensation or hire in air commerce (1 Nat'l Trans, Safety Bd., 1028, 1031 [1971]) did not preclude its obligation to procure appropriate passenger liability insurance in accordance with pertinent federal statutes and rules and regulations. The plain meaning of paragraph 6 of the contract appears to be that Golden Eagle transformed its legal duty to obtain passenger liability insurance, to a contractual duty assumed by Wichita State University to obtain such insurance for the express benefit of the passengers. Such agreement, to assume the legal responsibility of another, is lawful and enforceable.

The appellee contends that Wichita State University never intended to comply with the terms of the contract and that the contractual duty on the part of the University to obtain insurance was waived by Golden Eagle. The issue of waiver was not before this

court in *Brown v. Wichita State University,* supra (see Syl. ¶ 20 [4]). Whether there was a waiver of any of the terms of the written contract which would defeat rights of the third party beneficiaries would certainly be a matter of conjecture under the record before us. The appellee's reliance on *Stanfield v. McBride,* 149 Kan. 567, 88 P. 2d 1002, is not well taken.

Since it appears that many questions of fact must be determined which are not subject to summary disposition, the judgment is reversed and the district court is directed to proceed with the trial of the issues.

FROMME, J., not participating.

REPORTER'S NOTE:

Case No. 47,363 and Case No. 47,706 consolidated and rehearing granted.