No. 47,910

T. R. HENRICKSON, d/b/a LOGAN GRAIN CO., *Appellee,* v. GLEN M. DROTTS, *Appellant.*

(548 P. 2d 465)

Opinion filed April 10, 1976.

*E. Charles Hageman,* of Stockton, argued the cause and was on the brief for the appellant.

*Marion W. Chipman,* of Olathe, argued the cause, and *Stephen S. Sage,* of Phillipsburg, and *David K. Fromme,* of Weeks, Thomas, Lysaught, Bingham and Mustain, Charted, of Overland Park, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an action by plaintiff-appellee, a grain dealer, to recover the balance due on an open running account from defendant-appellant, a farmer and long time customer of plaintiff.

The petition alleged that the defendant owed plaintiff the sum of $18,014.91 as of June 1, 1974, according to the account which was annexed to the petition as Exhibit "A." Defendant answered plaintiff's petition denying the correctness of the account; alleging the account was outlawed under K. S. A. 60-512; and further alleging that plaintiff had at various and irregular intervals of time illegally charged and added interest to the account at a usurious rate; and further that plaintiff had failed to disclose the rate of interest charged as required by law.

Defendant also filed a counterclaim for the recovery of damages,

penalties and attorney fees for alleged violations of the Kansas Uniform Consumer Credit Code (K. S. A. 16a-1-101, *et seq.*).

Plaintiff was permitted to amend his petition and attach a copy of a promissory note, dated January 3, 1967, in the amount of $7,533.84 which plaintiff alleged was given by defendant in acknowledgment of his indebtedness to plaintiff as of that date.

Defendant answered plaintiff's amended petition admitting the execution of the note, but alleging that it was outlawed under K. S. A. 1975 Supp. 60-511; and further denying that the note was an acknowledgment to pay interest to the plaintiff on the open account. Defendant further alleged that the note was given in accord and satisfaction of the open account due as of the date of the note.

After pleadings were filed interrogatories were submitted to plaintiff by defendant pertaining to numerous items appearing on the account ledger and asking plaintiff to state the rate of interest that was charged and entered on the account at numerous entries of the interest posted on various dates throughout the life of the account. Plaintiff answered showing various rates of interest charged and also setting out posting errors and corrections which had been made in the account.

A pretrial conference was had at which it appears the parties agreed that total purchases made during the term of the account amounted to $74,959.54 and total payments of $65,207.06, which left at issue only matters pertaining to the charges for interest. It appears that at the pretrial conference both parties agreed to waive a jury trial and submit the case to the trial court on an agreed statement of facts. In this regard the record reflects:

"THE COURT: Is this a jury case?

"MR. HAGEMAN: I can't see any question for the jury, Your Honor. I think they are all questions of law.

"MR. SAGE: We don't think it is a jury case. We would be glad to submit it to the jurisdiction of the Court and the decision of the Court."

Apparently, acting in reliance on these statements of counsel, the presiding judge, Honorable Wm. B. Ryan, now deceased, suggested to the parties, and they agreed, to submit an agreed statement of facts for the court's use in ruling on the matter. However, both parties soon came to the realization a mutually agreed upon statement of facts was an impossibility. Thereafter, each party prepared and submitted separate statements of facts, ostensibly attempting to eliminate the necessity of an evidentiary hearing.

Although the statements of facts were in agreement in some particulars, there were numerous discrepancies with respect to material facts. Both parties agreed that interest was first charged to the account in 1961. However, plaintiff contended $66.18 interest was first charged to the account on May 3, 1961, pursuant to an agreement between the parties that one percent of the then existing balance would be charged for interest from the inception of the account up to and including May 3, 1961. According to plaintiff the parties agreed the interest thereafter would be eight percent per annum, as evidenced by a note signed January 3, 1967. It was plaintiff's theory this note was intended as a written acknowledgment of the amount owing on January 3, 1967, and of the eight percent figure for interest previously agreed to, and that the same was treated by plaintiff and defendant as a part of the running account and merged therein.

At the end of 1969 plaintiff's sales tickets bore a disclosure that the interest was to be one percent per month, or twelve percent per year. Plaintiff contends this disclosure, coupled with defendant's tacit acquiescence thereto, altered the previous agreement and established a new agreement upon interest rate.

On the other hand, in his statement and argument to the trial court, defendant contended he never agreed to pay interest on the open account. He argued the 1967 note was intended as an accord and satisfaction given in lieu of the open account at that date and was uncollectible five years after the due date on January 3, 1968, some nineteen months prior to the filing of this action. Defendant also relied on the fact that plaintiff has not proven any payments of the note that would toll the limitation period of K. S. A. 1975 Supp. 60-511.

The conduct of the parties in applying subsequent payments to the open account itself, and not on the note, give support to plaintiff's contention that the note merely evidenced the agreement as to principal and interest on the account and was not given in lieu of the account. Although plaintiff's theory may have appeared more believable to the trial court, the question is one of intent and, unless confessed, is usually an issue of fact.

After briefs and statements were filed, the court entered judgment for plaintiff in the exact amount sued for ($18,014.91) to bear interest at eight percent per annum until paid. No findings of fact or conclusions of law were made. The substance of the trial

court's decision is reflected in the following two paragraphs of the journal entry:

"Thereupon it was agreed between the parties that the case be submitted for decision to the court with each party submitting a Statement of Fact and Brief to the court within thirty (30) days from said date. Thereafter, within said thirty (30) day period of time Statement of Fact and Brief was submitted by each, plaintiff and defendant.

"Thereafter, on the 17th day of December, 1974, the court entered its decision in this matter finding that the plaintiff should recover the sum of $18,014.91 from the defendant, same to bear interest at eight per cent (8%) per annum from the 17th day of December, 1974, that the counterclaim of defendant should be denied, and that the costs herein should be taxed to the defendant."

Defendant filed a motion for a new trial which was presented to the Honorable Marvin W. Meyer, who had become judge of the seventeenth judicial district. At the hearing, which is reproduced in the record, defendant argued that the parties had failed to agree on a statement of facts and that the case was decided without a trial or evidentiary hearing. Defendant's motion was overruled and this appeal ensued.

If the case is to be treated as a judgment rendered on cross motions for summary judgment, the judgment cannot be affirmed because of the unresolved questions relating to the posting of interest and the intentions of the parties with respect thereto. A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties. (*Croley v. Matson Navigation Company*, 434 F. 2d 73 [5th Cir. 1970].) The mere fact that both parties have moved for summary judgment does not warrant the granting of either motion if the record reflects a genuine issue of fact. (*Hindes v. United States*, 326 F. 2d 150 [5th Cir. 1964]; and 10 Wright & Miller, Federal Practice and Procedure, Civil, § 2720, p. 459.)

If, on the other hand, we are to treat the case as having been tried and submitted to the court for a decision on the merits, a meaningful review by this court is thwarted by the absence of findings and conclusions. On numerous occasions this court has pointed out the necessity of a statement of the controlling facts and principles of law in order to facilitate appellate review of a trial court's decision. Our most recent statement on the subject appears in *Brown v. Wichita State University, P. E. C., Inc.*, 217 Kan. 661, 538 P. 2d 713, wherein Chief Justice Fatzer speaking for the court had this to say:

"Rule 116 of this court relating to appellate practice is broader than Section 60-252 (a) in that it requires in all contested matters submitted to a judge without a jury, the judge shall, in addition to stating the controlling facts required by 60-252, briefly state the legal principles controlling his decision. (*Duffin v. Patrick*, 212 Kan. 772, 512 P. 2d 442.) It may be said that the entering of summary judgment is also a contested matter and that when considered with Section 60-256 (d) the district court should state what it considers to be controlling facts and the legal principles upon which summary judgment was granted. Otherwise, this court upon appellate review will be required to explore and consider every possible legal theory which may be said to be involved in the summary judgment. Judges of a court of record, unlike a jury which may render an unreasoned decision in a general verdict, must, under our statute and Rule 116, 'go on the line,' so to speak, and render a 'reasoned decision'—that is, assign reasons for the decision rendered." (pp. 664-665.)

We shall not attempt to delineate specifically all of the apparently unresolved issues concerning challenged interest entries from the mass of items reflected by the account ledger sheets. Since the ledger sheets reproduced in the record are illegible, we have called for and have been supplied with the original exhibits. The entries and figures are legible, but are not posted in chronological order and the precise interpretation thereof is difficult in the absence of explanatory testimony. As previously pointed out, the counterclaim alleged that illegal and usurious interest was charged to the account at various dates. Defendant also argued to the trial court that the plaintiff was not properly registered with the Consumer Credit Commissioner of Kansas and that interest disclosures did not comply with K. S. A. 16a-5-203 and 12 C. F. R. § 226.7, p. 638. We shall briefly review a few of the challenged interest entries which appear to support to some extent at least the allegations of defendant's counterclaim.

At the end of 1967 the principal balance of the account appears to be $7,748.06; accrued interest of $602.71 was added leaving a total balance of $8,350.77. An entry of $222.67 for interest is shown to have been entered for the period of January 1, 1968, to April 1, 1968, a span of three months. Our calculations verify plaintiff's answer to interrogatories stating the annual rate for this entry to be 10.66 percent using a three-month time span as shown by the ledger sheets. Without further explanation this figure appears to be 2.66 percent above the rate allegedly agreed upon by the parties for this time period.

Plaintiff explains this excess to be the result of a posting error in that the interest entry should have been shown to cover a four-month

time period, rather than the three months shown by the ledger. Assuming the truth of this explanation, according to our calculations an eight percent interest figure applied for four months to the then balance would amount to within a few pennies of the actual entry made. Despite the plausibility these calculations add to plaintiff's explanation of the challenged entry as an unintentional posting error, they do not eliminate the necessity of conducting an evidentiary hearing on such disputed factual issues as the contract rate of interest actually agreed upon, the time span which this entry was intended to cover, and the intent of the parties in executing the promissory note.

As previously mentioned, beginning December 1, 1969, plaintiff's sales tickets bore this disclosure:

"All accounts due 10th of month following purchase. Interest will be charged thereafter at 1% per month or 12% per year."

Commencing January 1, 1970, the statutory maximum allowable rate of interest was fixed by K. S. A. 16a-2-202, and its predecessor, K. S. A. 1970 Supp. 16-508, at 1.20 percent per month, or 14.4 percent per annum for that portion of the balance in excess of $1,000.00. During this time period another challenged interest entry was made on plaintiff's books on May 1, 1972, in the sum of $243.00, covering a time span of one and one-half months. On a then balance of $12,353.62, plaintiff's answer to interrogatories sets the interest rate of this entry at 16.08 percent, explaining the excess resulted from a posting error. Defendant's computations produced a figure of 15.27 percent for the same entry. Without resolving these discrepancies, since either figure exceeds the statutory maximum rate, it appears defendant has made a prima facie showing of an excess charge and, thus, summary disposition of defendant's counterclaim was premature. It may well be that plaintiff's evidence at trial will show posting errors and any violations of statutory disclosure requirements to have been unintentional, thus absolving plaintiff under K. S. A. 16a-5-203 (3) and, likewise, that plaintiff discovered errors and sought to adjust and correct as permitted by K. S. A. 16a-5-201 (6), but on the record we are unable to so find as a matter of law.

Plaintiff argues with considerable persuasiveness that defendant should not be allowed to sandbag the trial court into the erroneous summary procedure followed in this case, "wait and see" and then in the case of an adverse judgment take an appeal on the invited error. We have applied the principle in numerous cases where we have found application thereof warranted by the conduct of the

parties. (See *Grimm v. Pallesen*, 215 Kan. 660, 527 P. 2d 978, and cases cited therein.) However, the state of the record in the instant case, coupled with the absence of findings and conclusions prevents a meaningful review of the decision below. The requirements of K. S. A. 60-252 and Rule No. 116 of this court are for the benefit of this court in facilitating appellate review. Waiver of such requirements is not within the rights of the parties or the authority of the court below.

The judgment is reversed and the cause remanded for further proceedings with directions that Rule No. 116 be fully complied with.

FROMME, J., not participating.