No. 47,955

First Land Brokerage Corporation, Bob Owen & Company, Inc., Jim Bligh and Bud Lord, *Appellants*, v. James Northern and Ed Roche, *Appellees*.

(551 P. 2d 866)

Opinion filed June 12, 1976.

*James D. Howell, Jr.*, of Howell & Koehler, of Overland Park, argued the cause and was on the brief for the appellants.

*Barry W. McCormick*, of Payne & Jones, Chartered, of Olathe, argued the cause, and *Robert P. Anderson*, of the same firm, was with him on the brief for the appellees.

*Per Curiam*: This is an action by real estate brokers against landowners for the recovery of a real estate commission. The trial court sustained a motion for summary judgment on behalf of the landowners, and the brokers appeal.

The business dealing between these parties commenced in July, 1973, when one of the brokers contacted Roche to inquire about the possibility of listing a building and eight acres of land for sale. Northern and Roche were equal co-owners of the Mark I office building in Overland Park, Kansas, and they were the sole stockholders and corporate officers of a Kansas corporation which owned approximately eight acres adjacent to the building. As a result of this initial contact, the landowners listed with the brokers both the building and the land. It is agreed by all parties that this original listing was a "package deal"—the land and building were to be sold together, or in the alternative, the land could be sold separately but the building could not be sold before the land. There was no written listing contract; all of the agreements between the parties were oral.

Ultimately the brokers were successful in interesting a California Trust in the building. Representatives of the Trust met with the

brokers and landowners and inspected the building. The Trust was not interested in acquiring the land.

Here the parties differ on what occurred. The brokers contend that the sale was to be conducted through a third party who would serve as a "straw man" in order to avoid certain registration delays with the Securities and Exchange Commission. Roche testified that there was a discussion of this "third party bit, which we turned down." The brokers contend that the landowners agreed on October 23, 1973 to sell the building or expose it to the market separately from the land. In other words the plaintiffs contend that when the Trust appeared interested in acquiring the building only, the defendants acquiesced in a change in the listing agreement and in effect listed the building and the land separately so that the building could be sold prior to the sale of the land. The landowners deny this and contend that there was never a deviation from the original listing agreement.

At any rate, the brokers procured a written offer or commitment from the Trust to the "straw man", Frank Hawkins, and a commitment from Hawkins to Northern and Roche to purchase the building. These two commitments were presented to Roche. The plaintiffs claim that upon the presentation of these commitments Roche shook hands and said "it was a deal." Roche testified that on that occasion he said, "Well, Jim, you finally made it in here with a deal. Fine, and we will be back at you." Roche and Northern then considered the commitments and turned them down because there was no payment of earnest money; they did not know the "straw man" or his financial responsibility; and the offer was for the building only, while Northern and Roche insisted that the eight acres had to be sold at or prior to the time the building was sold.

Depositions were taken of individual parties. Thereafter the defendants filed a motion for summary judgment "on the ground that the pleadings and depositions previously filed show that the defendants are entitled to judgment as a matter of law." The court, by letter of December 12, 1974, sustained the motion for summary judgment without comment or explanation.

The brokers contend that the court erred in sustaining the motion when there existed from the pleadings, depositions and affidavits material controverted issues of fact, and in sustaining the motion without buttressing the judgment with findings of fact and conclu-

sions of law sufficient to explain the rationale of the decision. We agree.

In order for a real estate broker to prevail in an action to recover a commission, the burden is upon the broker to prove that he produced a buyer who was ready, willing and able to purchase the property on terms acceptable to the owners. *Campbell v. Fowler,* 214 Kan. 491 (Syl. 1), 520 P. 2d 1285; *Winkelman v. Allen,* 214 Kan. 22, 519 P. 2d 1377. The broker must also show that he is the efficient and procuring cause of a consummated deal; however, this requirement is unnecessary where failure to consummate the sale results from the wrongful act or interference of the principal. *Winkelman v. Allen,* supra. Here, there are disputed issues as to whether or not the specific terms of the proposal were acceptable to the owners, and whether the owners agreed to sell the building separately and apart from the land or not. An issue of lesser importance is whether the "straw man" was financially able—although this is of little moment since he was backed by the Trust and there appears to be no dispute as to the finanical capabilities of the Trust. Defendants contend that there is no real dispute of fact and that they never deviated from the original "package deal." The brokers dispute this and the depositions of Bligh and Lord would support a contrary conclusion. We conclude that there are disputed issues of material fact and thus it was error to enter summary judgment.

The record is barren of any indication of the basis upon which the trial judge arrived at his conclusion. As we noted in *Brown v. Wichita State University, P. E. C., Inc.,* 217 Kan. 661, 664, 538 P. 2d 713, a general ruling such as this:

". . . does not leave an appellate court much to work on when the validity of a summary judgment is challenged on the basis that genuine issues of material fact exist. . . ."

Although K. S. A. 60-252 (*a*) exempts summary judgment from its requirement that the trial judge state the controlling facts, for the reason that rendition of summary judgment is improper if the controlling facts are in dispute, Rule 116 (214 Kan. xxxvii) of this court relating to appellate practice is broader than § 60-252 (*a*) in that it requires in all contested matters submitted to a judge without a jury, the judge shall briefly state the *legal principles controlling the decision. Duffin v. Patrick,* 212 Kan. 772, 512 P. 2d 442; and, see, *Henrickson v. Drotts,* 219 Kan. 435, 548 P. 2d 465, wherein we quoted from *Brown v. Wichita State University, P. E. C., Inc.,* supra, as follows:

" 'Rule 116 of this court relating to appellate practice is broader than Section 60-252 (*a*) in that it requires in all contested matters submitted to a judge without a jury, the judge shall, in addition to stating the controlling facts required by 60-252, briefly state the legal principles controlling his decision. (*Duffin v. Patrick,* 212 Kan. 772, 512 P. 2d 442.) It may be said that the entering of summary judgment is also a contested matter and that when considered with Section 60-256 (*d*) the district court should state what it considers to be controlling facts and the legal principles upon which summary judgment was granted. Otherwise, this court upon appellate review will be required to explore and consider every possible legal theory which may be said to be involved in the summary judgment. Judges of a court of record, unlike a jury which may render an unreasoned decision in a general verdict, must, under our statute and Rule 116, "go on the line," so to speak, and render a "reasoned decision"—that is, assign reasons for the decision rendered.' (pp. 664-665.)" (p. 439.)

Where the facts are not in dispute the court may properly enter summary judgment, but upon every such entry the court should state the controlling legal principles and enunciate the basis on which the judgment rests. Failure to do so can only result in confusion. Frequently, neither the litigants nor the appellate courts can decipher the ruling and uncover the genuine basis upon which the trial court entered the judgment.

The judgment is reversed with directions to proceed with trial.