No. 49,576

PHILLIP FREDRICKS AND JAMES L. FREDRICKS AND EUNICE FREDRICKS, HIS WIFE, *Appellants*, v. REX FOLTZ, JACK DAVIS, D/B/A DAVIS OIL COMPANY, AND CHAMPLIN PETROLEUM COMPANY, A CORPORATION, *Appellees.*

(594 P.2d 665)

Opinion filed May 5, 1979.

*Patrick L. Dougherty,* of Ratner, Mattox, Ratner, Ratner & Barnes, of Wichita, argued the cause and *William L. Roberts* was with him on the brief for appellants.

*Richard O. Skoog,* of Skoog & Latimer, of Ottawa, argued the cause and was on the brief for appellee Jack Davis.

*David H. Fisher,* of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause, and *James P. Nordstrom,* of the same firm, was with him on the brief for appellee Champlin Petroleum Company.

The opinion of the court was delivered by

HOLMES, J.: This is the second time for this case to come before this court. The first appeal was dismissed in the case of *Fredricks v. Foltz,* 221 Kan. 28, 557 P.2d 1252 (1976), as being premature.

Phillip Fredricks and his parents brought a personal injury action against Champlin Petroleum Company, Jack Davis d/b/a Davis Oil Company and Rex Foltz. Plaintiffs are appealing from two summary judgments: one rendered in Wyandotte County in favor of Champlin and one rendered in Franklin County in favor of Davis. Plaintiffs also appeal the ruling of the Wyandotte court changing venue of the case to Franklin County.

Davis was the owner of a gasoline station in Princeton, Kansas, operated by Foltz under an oral lease agreement. Davis was

responsible for major repairs to the property. Davis was a distributor for Champlin and operated two other stations and a bulk gasoline plant in Ottawa under agreements with Champlin. The Princeton station was operated by Foltz as "Foltz Champlin Service" and he purchased his gasoline and other Champlin products from Davis.

Plaintiff, Phillip Fredricks, then seventeen years old, was employed by Foltz to work at the Princeton station. On June 18, 1972, an explosion and fire occurred at the station severely injuring Fredricks. The station was not open for business with the public at the time. On this Sunday morning Fredricks and a friend came to the station, not to work or open the station for business, but to pick up a car which Fredricks had purchased from Foltz. While at the station, Richard Foltz, a brother of the defendant, drove into the station and asked young Fredricks if he would change the oil in his car. Fredricks agreed and the car was driven into one of the work bays over a grease pit. The car was leaking gasoline and while Fredricks worked in the front of the pit changing the oil, Richard Foltz was at the rear attempting to repair the gas leak. Fredricks left and reentered the pit several times and was fully aware that gasoline was leaking into the pit. There was evidence that the gasoline created a stream one-half inch deep by five inches wide on the floor of the pit. The pit was equipped with an electric sump pump installed in a well or hole in the lower end which was used to pump water and other fluids from the pit. The pump was self-actuating by means of a float mechanism which automatically started the motor on the pump when the fluid level reached a certain depth in the well. It is presumed that when the gasoline reached a certain depth the pump motor was activated, which in turn caused the explosion and fire. Fredricks was severely burned. Richard Foltz, who was not in the pit at the time of the explosion, escaped injury.

Previous to Fredricks' employment there had been another fire in the grease pit in which no one was injured. Both Davis and Foltz had knowledge of the previous fire but Fredricks was unaware of it. Following the first fire the pit fell into disuse, an old truck was parked over it and gradually the pit accumulated trash, junk and water. Fredricks was hired in the meantime and volunteered to clean out the pit so there would be an additional stall in the station available for service and repairs. Foltz agreed.

After Fredricks had cleaned out the junk, trash and debris, the pit contained about one and one-half feet of water. Rather than bail the water out by hand, Fredricks suggested that he install a sump pump which belonged to his father and in that manner pump the pit dry. After doing so, the sump pump was allowed to remain in the pit until such time as Foltz could obtain a replacement, which he had not done at the time of the explosion.

Plaintiffs originally brought this action for negligence in Wyandotte County where, after discovery, the trial court sustained a motion for summary judgment in favor of Champlin. After ruling in favor of Champlin, the trial court sustained a motion of the other defendants to transfer the case to Franklin County where all the remaining parties resided. These two rulings by the trial court were appealed to this court in the previous case. As that appeal was dismissed, the appellants again urge error in the rulings of the Wyandotte court.

In the Franklin County district court, upon completion of further discovery, Davis moved for summary judgment and his motion was sustained. The trial court ruled, as a matter of law, that upon the undisputed facts, Davis, as landlord and owner of the property, was not liable to Fredricks. The court also found, as a matter of law, that Fredricks was guilty of contributory negligence which barred any recovery. This appeal followed.

Plaintiffs originally based their action on the theories that there was an agency relationship between Champlin and Davis, and an agency relationship together with a landlord-tenant relationship between Davis and Foltz. Plaintiffs concede there was no direct connection between Champlin and Foltz and that for Champlin to be liable under any of their theories, Davis must first be found to be liable. We will, therefore, turn directly to the question of the propriety of the Franklin County court in granting summary judgment in favor of Davis.

At the time of argument it was conceded by counsel for plaintiffs that a settlement had been reached with Foltz and he is no longer a party to this appeal. It was also conceded that the settlement with Foltz would preclude any recovery from Davis on an agency relationship. See *Jacobson v. Parrill,* 186 Kan. 467, 351 P.2d 194 (1960). Any possible remaining liability of Davis must be predicated upon the landlord-tenant relationship.

Before proceeding to the crux of plaintiffs' arguments it might

be well to once again review certain basic principles which apply when summary judgment is involved. K.S.A. 60-256(c) provides for the entry of summary judgment "if the pleadings, depositions, answers to interrogatories . . . if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In *Mildfelt v. Lair,* 221 Kan. 557, 561 P.2d 805 (1977), we summarized the relevant principles surrounding summary judgments.

"Summary judgment should not be entered where there are disputed issues of material fact. *Motors Insurance Corporation v. Richardson,* 220 Kan. 288, 552 P.2d 894; *First Land Brokerage Corporation v. Northern,* 220 Kan. 48, 551 P.2d 866.

"Where the sole question presented is one of law, a final determination may be had on a motion for summary judgment. *Wagner v. Mahaffey,* 195 Kan. 586, 408 P.2d 602. A motion for summary judgment should be sustained only where there is no genuine issue of material fact, and a party is entitled to judgment as a matter of law. *Harold v. Harold,* 218 Kan. 284, 543 P.2d 1019.

"In considering a motion for summary judgment, pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed. *Voth v. Chrysler Motor Corporation,* 218 Kan. 644, 545 P.2d 371; *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 679, 522 P.2d 449. Factual inferences tending to show triable issues must be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of issues of fact, a motion for summary judgment will not lie. *Mechtley v. Price,* 217 Kan. 344, 347, 536 P.2d 1385; *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33 (10th Cir. 1975); and *Stevens v. Barnard,* 512 F.2d 876 (10th Cir. 1975).

"An appellate court should read the record in the light most favorable to the party who defended against the motion for summary judgment. It should take such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant. *Woods v. Cessna Aircraft Co.,* 220 Kan. 479, 553 P.2d 900; and see 10 Wright & Miller, Federal Practice and Procedure: Civil § 2716." p. 559.

Plaintiffs rely upon *Waterbury v. Riss & Company,* 169 Kan. 271, 219 P.2d 673 (1950), to support their contention that there was a violation of a duty owed by Davis as landlord to his tenant Foltz and therefore to third parties rightfully upon the premises. In *Waterbury* the factual situation was extremely involved with an action being brought for the wrongful death of Charlie Frederick Waterbury by his widow, for herself and the benefit of eleven-year-old Charlene Waterbury. The deceased was killed when the floor collapsed in a warehouse where Waterbury was delivering a load of beer. The plaintiffs sued the owners of the building, the lessee, the sublessee and the truck line. The jury

found in plaintiff's favor and specifically found negligence upon the part of the owners, the lessee and the sublessee. The verdict was upheld with three justices dissenting as to the liability of the landlord-owners. The majority, in affirming the judgment against the landlord-owners, stated:

"The American Law Institute, in its Restatement of Torts, § 357, lays down what appears to be the applicable rule as follows:

'A lessor of land is subject to liability for bodily harm caused to his lessee and others upon the land with the consent of the lessee or his sub-lessee by a condition of disrepair existing before or arising after the lessee has taken possession, if

'(a) the lessor, as such, has agreed by a covenant in the lease *or otherwise,* to keep the land in repair, and

'(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented.' " p. 291.

The court evidently found that the weakened floor structure of the warehouse constituted a dangerous condition known to the owners and also was a breach of a representation that the building was in a suitable condition for use as a storage warehouse. It appears that the sublessee overloaded the floor structure with cases of beer and the owners and original lessee were aware that the excessive load was causing sagging and problems with the flooring.

In order for plaintiffs to bring themselves within the rule of *Waterbury,* it must be shown that (1) a condition of disrepair existed before or arose during the time the lessee was in possession and (2) the lessor had agreed to keep the premises in repair and (3) the disrepair creates an unreasonable risk which the performance of the owner's agreement would have prevented.

The general rule in Kansas, as elsewhere, is:

"A tenant having control of the demised premises is deemed, so far as third persons or the public are concerned, to be the owner, and in cases of injuries to third parties, whether on or off of the premises, occasioned by the condition or the use of the premises, it is the general rule that, prima facie, the breach of duty, and therefore the liability, is that of the tenant and not that of the landlord." 49 Am. Jur. 2d, Landlord and Tenant § 981 at 953.

In *Borders v. Roseberry,* 216 Kan. 486, 532 P.2d 1366 (1975), it was recognized that the law generally places upon the lessee the burden of maintaining the leased premises in a safe condition. In *Borders* we stated:

"Traditionally the law in this country has placed upon the lessee as the person in possession of the land the burden of maintaining the premises in a reasonably safe condition to protect persons who come upon the land. It is the tenant as possessor who, at least initially, has the burden of maintaining the premises in good repair. (*Bailey v. Kelly,* 93 Kan. 723, 145 Pac. 556, overruling a prior decision in the same case, *Bailey v. Kelly,* 86 Kan. 911, 122 Pac. 1027.) The relationship of landlord and tenant is not in itself sufficient to make the landlord liable for the tortious acts of the tenant. (*Greiving v. La Plante,* 156 Kan. 196, 131 P.2d 898; *Campbell v. Weathers,* 153 Kan. 316, 111 P.2d 72.) When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the responsibilities of one in possession, both to those who enter onto the land and to those outside of its boundaries. Professor William L. Prosser in his Law of Torts, 4th Ed. § 63, points out that in the absence of agreement to the contrary, the lessor surrenders both possession and control of the land to the lessee, retaining only a reversionary interest; and he has no right even to enter without the permission of the lessee. There is therefore, as a general rule, no liability upon the landlord, either to the tenant or to others entering the land, for defective conditions existing at the time of the lease." p. 488.

The court in *Borders* pointed out certain exceptions to the general rule:

1. Undisclosed dangerous conditions known to lessor and unknown to the lessee. p. 488.

2. Conditions dangerous to persons outside of the premises. p. 489.

3. Premises leased for admission of the public. p. 489.

4. Parts of land retained in lessor's control which lessee is entitled to use. p. 490.

5. Where lessor contracts to repair. p. 491.

6. Negligence by lessor in making repairs. p. 492.

Each of the exceptions were discussed at length in *Borders* and it is not shown that any of the six exceptions are applicable in the instant case. Before any of the exceptions apply, it must be shown that "a defective condition [was] existing at the time of the lease." p. 488. The mere existence of a grease pit in a gasoline station cannot in and of itself be said to be a defective condition. While modern so-called "service stations" (a misnomer in this day and age) are ordinarily equipped with hydraulic lifts for use in servicing automobiles, it is not at all uncommon for the old-fashioned filling station to be equipped with one or more grease pits where the automobiles are driven over them for purposes of servicing from underneath. Plaintiffs have not shown any defective condition existed upon the premises which would bring into

play one or more of the exceptions iterated in *Borders.* On the contrary, the evidence is not disputed that the pit, under Foltz's control, had not been used for some time, that Fredricks suggested it be cleaned out and used, that Foltz agreed and Fredricks actually cleaned out the pit and that Fredricks installed his father's sump pump to remove fluids from the pit. The circumstance that made the premises dangerous, resulting in Fredricks' tragic injuries, was the draining of the gasoline into the pit leading to the subsequent explosion caused by the starting of the sump pump. The explosion and fire could just as readily have been caused by a dropped wrench or other activity creating a spark.

Assuming that the mere presence of the grease pit created in some manner a defective condition, it is difficult to see how any of the recognized exceptions could apply. The existence of the pit was certainly known to the lessee; it could not be dangerous to persons outside the premises; although the premises were leased for admission of the public, the station was not open to the public at the time; no part of the property remained in lessor's control; the lessor agreed only to make major repairs and the lessor had not made any repairs to the pit.

In *Kellenbach v. Manne,* 138 Kan. 797, 28 P.2d 746 (1934), it is stated:

"It will be seen that the weight of authority is that where the premises are in a reasonably safe condition and only become dangerous when some agency outside the control of the landlord has intervened, the landlord is not liable for the injuries sustained by an invitee of the lessee who is lawfully on the premises." p. 799.

A careful review of the record fails to disclose any evidence that the existence of the grease pit, or its condition, created a defective or dangerous condition for which Davis might be liable. The trial court found that Foltz had control of the premises and that there was no liability of Davis for the acts of his tenant, Foltz. Under the circumstances, the trial court was not in error in sustaining summary judgment for the defendant Davis. In view of what has been said, it is not necessary that we consider the question of Fredricks' contributory negligence.

While the foregoing is sufficient to dispose of all points on appeal, we will briefly address the two questions raised by plaintiffs in appealing the summary judgment granted Champlin in Wyandotte County and the change of venue to Franklin County.

Although the determination that Davis had no liability, based upon the landlord and tenant relationship with Foltz, relieves Champlin of liability, it is also clear that the Wyandotte County court was correct in the first instance in finding no agency relationship between Champlin and Davis and in sustaining the motion for summary judgment for Champlin. *Hendrix v. Phillips Petroleum Co.,* 203 Kan. 140, 453 P.2d 486 (1969); *Greiving v. La Plante,* 156 Kan. 196, 131 P.2d 898 (1942). The determination of what constitutes agency and whether there is competent evidence to prove its existence is a question of law. *Henderson v. Hassur,* 225 Kan. 679, 682, 594 P.2d 650 (1979). Consequently the subsequent order of the Wyandotte County court in transferring the proceedings to Franklin County was correct. K.S.A. 60-608. See also *Fredricks v. Foltz,* 221 Kan. at 32-33.

Finding no error in the rulings of the trial courts, the judgments are affirmed.