(856 P.2d 169)

No. 68,612

In the Matter of the Marriage of SUE ANN CASE n/k/a SUE ANN MILLER, *Appellant,* and CARLTON M. CASE, *Appellee.*

Opinion filed June 25, 1993.

*William E. Waters,* of Topeka, for appellant.

*David A. Hanson,* of Glenn, Cornish, Hanson & Karns, of Topeka, for appellee.

Before BRISCOE, C.J., GERNON, J., and THOMAS H. GRABER, District Judge, assigned.

GERNON, J.: Sue Ann Case (now Sue Ann Miller) (Miller) appeals the district court's affirmance of a decision of an administrative hearing officer (AHO) reducing Carlton M. Case' child support obligation.

Miller raises five issues on appeal: (1) Was there a material change in circumstances justifying a reduction in child support based upon the facts in this case; (2) was it an abuse of discretion to impute Case' income at 50% of its prior amount after the AHO found that Case voluntarily terminated his employment; (3) was it an abuse of discretion to impute Case' income at 50% of its prior amount based on the record of Case' receipt of substantial lump sum payments; (4) are the findings in this case sufficient to support the AHO's order reducing Case' child support obli-

gation; and (5) was the proper age category used to calculate child support for Jessica A. Case (youngest child of the parties)?

K.S.A. 1992 Supp. 20-164 requires the Kansas Supreme Court to establish by rule an expedited judicial process for, among other things, modification of child support orders. In response, the Kansas Supreme Court adopted Supreme Court Rule 172 (1992 Kan. Ct. R. Annot. 139), which states in pertinent part:

"(a) The administrative judge in each district shall provide for an expedited judicial process which will increase effectiveness in support, visitation, and parentage proceedings by appointing one or more judges or court trustees to preside as hearing officers at summary hearings relating to the establishment, modification, or enforcement of [child] support . . . .

"(b) The hearing officer is authorized to:
　(1) *Take testimony* and *prepare written findings of fact and conclusions of law* which shall constitute the summary record.
　(2) *Evaluate evidence* and decide the most expeditious manner either to establish or to enforce court orders.

.　.　.　.

　(5) Enter orders, including default orders, as necessary; orders proposed by court trustees shall be approved by a judge before the order is issued.

.　.　.　.

"(g) Decisions of district magistrate judges or court trustees appointed pursuant to this rule shall be subject to review by an associate district judge or district judge on the motion of any party filed within 10 days after the order was entered." (Emphasis added.)

In December 1990, Shawnee County announced the development of Family Law Guidelines. For the purposes of the matter before us, the pertinent provisions of the 1992 Shawnee County Family Law Guidelines are as follows:

"4.0 PROCEDURE BEFORE THE ADMINISTRATIVE HEARING OFFICER (AHO).

"4.01 AHO Jurisdiction and Procedure.

"All post judgment motions filed by counsel to modify child support orders . . . will be assigned to the AHO. . . .

.　.　.　.

"4.03 Hearing Procedure.

"Hearings before the Administrative Hearing Officer (AHO) are informal in nature and generally are expected to last about one-half hour. Any counsel anticipating a more lengthy hearing should advise the Administrative Hearing Officer's office when AHO hearing time is requested."

Regarding the keeping of a record, the district court's Family Law Guidelines state:

"4.05 Stenographic Record.

"A stenographic record is not provided in proceedings before the AHO. The record will consist of the Hearing Officer's findings, order and any exhibits presented. If counsel wish a stenographic record of the proceedings before the Hearing Officer, they should retain a court reporter."

Regarding judicial review, the Guidelines provide the following:

"4.06 Judicial Review.

"Either party shall have ten (10) days from the filing of the order of the Administrative Hearing Officer to file a Motion for Judicial Review. The District Judge assigned to domestic matters will review the Administrative Hearing Officer's decision and may affirm the decision by denying the appeal, grant oral argument or a re-hearing before a District Judge. Evidence and issues not presented to the Hearing Officer will not be considered by the Court on appeal. The District Court Trustee's Office will send notice to the parties of the District Judge's denial or hearing setting on Motions for Judicial Review.

"All Motions for Judicial Review should be accompanied by a memorandum which sets forth the claimed error of the AHO. This memorandum is a very important step in appealing the AHO decision as oral argument or re-hearing is frequently denied, absent a statement showing good cause."

In the case before us, there was no stenographic record kept of any proceedings. Further, when the parties attempted, pursuant to Supreme Court Rule 3.04 (1992 Kan. Ct. R. Annot. 16), to settle on a statement of the evidence or proceedings from the best available means, they could not agree. Rule 3.04 states that, in such situations, "the statement with objections or proposed amendments shall be submitted to the *judge of the district court* for settlement and approval, and as settled and approved shall be included in the record on appeal by the clerk of the district court." (Emphasis added.) There is no provision in the rule, nor do we find any statute, which allows an AHO instead of a judge to enter an order settling and approving a statement of the evidence or proceedings, presuming this was an evidentiary hearing.

In the case before us, what we have, which purports to be a record, is a preprinted form entitled "Administrative Hearing Officer Order," with blanks to fill in, places for names or status to be circled, and certain conclusory items marked. We also have one page from a yellow pad with some handwriting on it. Pre-

sumably, the handwriting belongs to the AHO, but the author is unidentified, and we have no way of discerning who wrote it. Part of the page appears to have been written in different colored ink, perhaps at a different time. We also have some letters and a computer printout. It is indicated the notes describe "proffered" evidence of each party. However, we were told by both counsel at oral argument that no witnesses testified and that, in fact, the notes reflect the arguments of counsel. In short, we have no testimony, no depositions, no affidavits, no tax returns, and a minimum of financial records to provide a record or basis to support the conclusions of the AHO.

Although the Kansas Supreme Court in *In re Marriage of Soden*, 251 Kan. 225, 834 P.2d 358 (1992), approved generally of the expedited proceedings in Shawnee County, a careful reading of the opinion indicates that it did so with some reservations. In *Soden*, the Kansas Supreme Court stated:

"The trial court's letter decision stated the court considered the record and the arguments made at the hearing on the petition for judicial review. The record included depositions, numerous domestic relations affidavits, child support worksheets, tax returns, financial records, employment earning statements, and medical records." 251 Kan. at 237.

Here, we have little or none of the documentation approved in *Soden*.

Each of the issues raised by Miller challenges conclusory findings of the AHO. It is beyond question that Miller has a right to appeal to this court. For us to adequately evaluate the issues raised on appeal, we must look to the record in the case before us.

Kansas district courts are courts of record. K.S.A. 20-301; Kan. Const. Art. 3, § 1. See *State v. Higby*, 210 Kan. 554, 558, 502 P.2d 740 (1972) (district courts in criminal cases are courts of record); *Roitz v. Brooks*, 5 Kan. App. 2d 534, 536, 619 P.2d 1169 (1980) (district courts in civil cases are courts of record).

A court of record is defined as "[a] court that is required to keep a record of its proceedings, and that may fine or imprison. Such record imports verity and cannot be collaterally impeached." Black's Law Dictionary 353 (6th ed. 1990).

We are unable to find any authority for requiring a litigant in a civil proceeding to pay for the making of a record. In *DeKalb*

*County v. Deason,* 221 Ga. 237, 238, 144 S.E.2d 446 (1965), the court states: "It is generally accepted that the one essential feature necessary to constitute a court of record is that a permanent record of the proceedings of the court must be made and kept." "[A] record should be made of *all* proceedings of courts of record." *Birch v. Birch,* 771 P.2d 1114, 1116 (Utah App. 1989).

Several Kansas cases demonstrate the necessity and importance of the district court's duty to keep a record of its proceedings. In *Roitz v. Brooks,* this court examined "whether a trial court can enter judgment notwithstanding the verdict where the record does not reveal that a motion for directed verdict was made at the close of the evidence, and the parties are at odds as to whether one was made by the prevailing party." 5 Kan. App. 2d 534. In reversing the trial court's decision to set aside the verdict, we stated:

"In *State v. Higby,* 210 Kan. 554, 502 P.2d 740 (1972), where it was questionable as to whether or not certain actions in court had been taken, the court held:

'District courts are courts of record. Their proceedings of significance such as events touching upon the right to speedy trial are to be recorded. The only safe practice if the interests of the accused, the prosecution and the public are to be effectively protected is that those records shall control.' Syl. ¶ 3.

See also *State v. Pendergrass,* 215 Kan. 806, 528 P.2d 1190 (1974), where the foregoing was applied to the detriment of an accused.

"These were criminal cases where a constitutional right was involved and do not necessarily dictate disposition here. However, district courts in civil actions are also courts of record, and it would appear appropriate that where disputes as to important occurrences in their proceedings remain unresolved, then the records should control, and we so hold." 5 Kan. App. 2d at 536.

In *Henrickson v. Drotts,* 219 Kan. 435, 438, 548 P.2d 465 (1976), the Kansas Supreme Court stated that "[o]n numerous occasions this court has pointed out the necessity of a statement of the controlling facts and principles of law in order to facilitate appellate review of a trial court's decision." Chief Justice Fatzer, writing for the Kansas Supreme Court in *Brown v. Wichita State University, P.E.C., Inc.,* 217 Kan. 661, 664-65, 538 P.2d 713 (1975), stated:

"Rule 116 of this court relating to appellate practice is broader than Section 60-252(a) in that it requires in all contested matters submitted to a judge without a jury, the judge shall, in addition to stating the controlling facts

required by 60-252, briefly state the legal principles controlling his decision. (*Duffin v. Patrick*, 212 Kan. 772, 512 P.2d 442.) It may be said that the entering of summary judgment is also a contested matter and that when considered with Section 60-256(d) the district court should state what it considers to be the controlling facts and the legal principles upon which summary judgment was granted. Otherwise, this court upon appellate review will be required to explore and consider every possible legal theory which may be said to be involved in the summary judgment. Judges of a court of record, unlike a jury which may render an unreasoned decision in a general verdict, must, under our statute and Rule 116, 'go on the line,' so to speak, and render a 'reasoned decision'—that is, assign reasons for the decision rendered."

"Failure to [provide an adequate record] can only result in confusion. Frequently, neither the litigants nor the appellate courts can decipher the ruling and uncover the genuine basis upon which the trial court entered the judgment." *First Land Brokerage Corporation v. Northern*, 220 Kan. 48, 51, 551 P.2d 866 (1976).

In *Howard v. Miller*, 207 Kan. 246, 485 P.2d 199 (1971), the Kansas Supreme Court held that the trial court committed reversible error in giving an additional instruction to the jury during its deliberation, where the content of the jury's question and the court's answer thereto were unknown and where the communication took place outside the presence of and without notice to the parties or their counsel. In remanding for a new trial, the court stated:

"Defendant here urges affirmance of the judgment because the question which was communicated to the trial court was answered correctly, and hence there was no prejudice. The difficulty is the record fails to support this contention factually. The most the record tells us is the answer *probably* was correct and *probably* there was no prejudice. We do not believe a litigant in a court of record should be required to accept this kind of clouded disposition of his cause." 207 Kan. at 252.

Another case on point, from Utah, is *Briggs v. Holcomb*, 740 P.2d 281 (Utah App. 1987). In *Briggs*, the parties participated in an unrecorded teleconference regarding Briggs' motion for summary judgment. The court in *Briggs* stated:

"Under the Utah Constitution, district courts are courts of record. Utah Const. Art. VIII, § 1. We share appellant Holcomb's concern about the selective making of records in the face of that requirement. Of course, the problem is larger than the local procedure permitting unrecorded telecon-

ferences. Other areas of concern include law and motion practice, closing arguments, and conferences in chambers. Although consistently making a record of all proceedings imposes a greater burden on the trial court and court reporters, it is impossible for an appellate court to review what may ultimately be important proceedings when no record of them has been made.

"Notwithstanding this concern, we are convinced that although prejudicial error can result from failure to make a complete record, we need not reach the issue of whether Rule 2(k) is unconstitutional because, in the instant case, the potential for prejudice is remedied by the intensive scrutiny given summary judgments on appeal." 740 P.2d at 282-83.

The real issue before us, which permeates this entire proceeding, is whether there is a sufficient record for this court or any other appellate court to determine, under the appropriate standards of review, whether the issues raised by Miller are credible or whether the conclusions of the AHO are supported by a record. We conclude the record is insufficient.

Supreme Court Rule 172 refers to "testimony," "written findings of fact and conclusions of law," and "evidence." Here, given the state of the record before us, the only issue we can meaningfully address is whether the AHO abused her discretion by placing the parties' youngest child, Jessica, in the 0-6 age group rather than the 7-15 age group for the purpose of determining the child's age category for child support purposes. The worksheet clearly calls for the age of the child to be designated as the child's next birthday. Jessica was closer to seven years old at the time; her date of birth is found in the file, and, if that information is correct, it was plainly before the AHO. The information provided by Miller was correct at the time it was provided, and she did nothing to invite error. Nor can she be faulted for failing to raise the matter below since, until there was a "ruling" by the AHO and denial of meaningful review by the trial court, there was nothing from which to appeal. There is no record and there are no findings of fact or conclusions of law. Case cannot now complain about Miller's position or claim she invited error.

The AHO is required to follow the guidelines. The guidelines unequivocally state that a child's nearest birthday is to be used. The order should be framed to look at the age of the child on the date of the order. Therefore, for the purposes of the guidelines, Jessica was not properly categorized in the right age group.

We have held that an unexplained deviation from the guidelines is reversible error. See *In re Marriage of Schwien*, 17 Kan. App. 2d 498, 511, 839 P.2d 541 (1992); *In re Marriage of Schletzbaum*, 15 Kan. App. 2d 504, 507, 809 P.2d 1251 (1991).

We cannot discern from the information before us the basis for the AHO's order and are left to wonder upon what basis the district judge denied judicial review. The writings contain no findings of fact or conclusions of law, there being no record of the hearing except that which the AHO purported to prepare under Supreme Court Rule 3.04. We note that Supreme Court Rule 165 (1992 Kan. Ct. R. Annot. 134) requires a *judge*, in all contested matters, to state the controlling facts and the legal principles controlling the decision. These requirements are mandatory under both K.S.A. 60-252 and Supreme Court Rule 165.

While such expedited procedures may be in vogue due to the increased volume of cases, courts ought not lose sight of basic judicial functions and the right of litigants to have access to the courts. This principle was stated by the Kansas Supreme Court in *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 1027, 686 P.2d 171 (1984), where Justice Lockett, writing for the court, stated:

"The constitutional guarantee of providing for open courts and insuring a civil remedy for injuries to persons and property is a statement of our philosophy and a general rule which can be used to solve civil conflicts. This right is generally regarded as one of the most sacred and essential constitutional guarantees. However, the guarantee creates no new rights but merely is declaratory of our fundamental principles. In light of this guarantee, it is the policy and the obligation of the state to furnish and of the courts to give every litigant his day in court and a full and ample opportunity to be heard. This right extends to everyone who may be materially affected by the action of the court in a legal proceeding. The guarantee secures and places every citizen within the protection of the law of the land. It insures the right of every person protected by it to seek remedy by court action for any injuries done to him or his personal property. The guarantee entitles the citizen to have justice administered according to the law without denial or delay. A litigant is assured the right to prosecute or defend an action, provided he prosecutes or defends the action as contemplated by law. Since a prisoner can sue or be sued in this state he must be afforded the right to his day in court.

"The right to a day in court means the right to be afforded an opportunity to be heard."

Miller raises the issues of whether there was a material change in circumstances, whether the lump sum settlement should be imputed, and whether Case should be charged with the ability to provide income consistent with his annuity had he taken it on a yearly basis. In the absence of an adequate record, we cannot address these issues on the merits.

This matter is reversed and remanded. On remand, the district court is directed to hold an evidentiary hearing before a judge of the district court, with a record to be made at no expense to the litigants, so the parties may be afforded an opportunity to be heard and a proper record made. These procedures will protect the rights of the litigants both before the district court and on appeal.

Reversed and remanded for further proceedings.