(915 P.2d 145)

No. 72,990

IN THE MATTER OF THE ESTATE OF ESTHER BRODBECK, DECEASED. SHIRLEY HALL, *Appellant*, v. RUTH O. JAMES and DWIGHT HART, *Appellees*.

Opinion filed April 19, 1996.

*Keith Martin*, of Payne & Jones, Chartered, of Overland Park, for the appellant.

*Fred J. Logan, Jr.*,of Logan & Logan, of Prairie Village, for the appellees.

Before PIERRON, P.J., KNUDSON, J., and CAROL BACON, District Judge, assigned.

PIERRON, J.: Shirley Hall appeals the district court's grant of summary judgment in favor of Ruth O. James and Dwight Hart (collectively referred to as proponents). Hall argues the will and codicil admitted to probate by proponents were the product of undue influence. We affirm the granting of summary judgment.

Esther Brodbeck executed a will on May 18, 1988. She executed a second will, revoking all previous wills, on January 15, 1992, and enacted a first codicil on October 15, 1993. Brodbeck died on December 28, 1993. She had survived her husband and they had never had children. On January 6, 1994, James, executor of the 1992 will, filed a petition for probate of Brodbeck's 1992 will and first codicil.

Brodbeck had resided in the Pines apartment complex where James was manager. James and Brodbeck became close friends after Brodbeck's husband died, and James had helped Brodbeck over the years. James knew she was the executor of Brodbeck's 1992 will and that she had been given power of attorney by Brodbeck, but contended she had no knowledge that she was a beneficiary under the will. James had accompanied Brodbeck, at Brodbeck's expense, to Houston for oncological treatment. Brodbeck had loaned James $500 in 1991, and James' handwriting appears

on this entry in Brodbeck's check registry. Hart had been Brodbeck's hairdresser for many years and had frequently driven her on errands. James and Hart had accompanied Brodbeck to various medical appointments.

Hall, Brodbeck's niece, stated that Brodbeck suffered from extensive health problems during the period surrounding the execution of the 1992 will. Hall submitted medical records demonstrating that Brodbeck was diagnosed with ocular melanoma, eye cancer, about the time she had executed the 1992 will. The appellate record indicates that Hall had other health problems as well and had been taking Halcion for approximately a month prior to the execution of the 1992 will.

Hall contested the 1992 will because she had been disinherited. Under the 1988 will, Hall was to receive half of Brodbeck's tangible personal property, unless a list existed to dispose of all or part of it, and half of the residue of Brodbeck's estate. James Zoss, Brodbeck's great-nephew, was to receive the remaining half of Brodbeck's tangible personal property and residue. Hart was to receive any car owned by Brodbeck at the time of her death. Beverly Lindsey, Brodbeck's lifetime friend, was nominated as the executor for Brodbeck's estate.

Under the 1992 will, the executor was changed to James. James and Hart were the only beneficiaries and were to take equal shares of Brodbeck's personal and household effects and residue of the estate. Hart also received any car owned by Brodbeck at the time of her death. The codicil provided that any beneficiary who contested the probate of Brodbeck's will would forfeit all interest to her property.

Hall filed a defense to the petition filed by James in which she alleged that Brodbeck was under the control and undue influence of James and Hart during the execution of the 1992 will and codicil. Hall also alleged that Brodbeck was under the insane delusion that Hall and Lindsey no longer loved her and that the delusions were brought about because of Brodbeck's advancing age, health problems, medication, and the undue influence of James and/or Hart. Hall cross-petitioned to admit Brodbeck's 1988 will to probate.

At the close of the discovery period, proponents filed a petition for summary judgment. At Hall's request, the district court granted an extended discovery deadline and additional time to file a response to the motion. Hall filed a 317-page response in opposition to the motion for summary judgment. After a hearing, the district court took the motion under advisement.

By letter dated September 13, 1994, the district court entered summary judgment on behalf of James and Hart. In a two-page letter, the district court stated that although summary disposition would result in significant economy to the estate, it should be taken with caution in probate matters, and it was the district court's determination whether material facts still remained at issue in the case. The district court then granted the motion for summary judgment, admitted the 1992 will and codicil into probate, and requested that proponents prepare a journal entry and present it for filing within 10 days.

Additionally, the district court's letter stated: (1) The court had found analogous to these circumstances the case of *Crooks v. Greene*, 12 Kan. App. 2d 62, Syl. ¶¶ 2-3, 736 P.2d 78 (1987); (2) Hall had the burden of proving Brodbeck's improper testamentary capacity or undue influence by the legatees and devisees; (3) Hall's failure to comply with Supreme Court Rule 141 (1995 Kan. Ct. R. Annot. 160) had made the district court's job difficult; (4) Hall had failed to make a sufficient showing on any essential element to which she had the burden of proof; and (5) the *in terrorem* clause in the codicil was not material to the summary judgment motion.

Counsel for proponents prepared a summary judgment journal entry. The district court signed the journal entry, and it was filed on October 11, 1994. The certificate of service stated that counsel for proponents hand-delivered a copy of the journal entry to Hall's attorney, but it does not indicate the date when service occurred.

We first address the issue of whether summary judgment should be a remedy available to the parties where a case presents probate matters similar to those currently before the court. Both parties agree that the Kansas appellate courts have not addressed the issue of whether summary judgment can be granted when a will is attacked on grounds of undue influence.

Hall interprets the absence of a Kansas decision to mean that it is obvious Kansas trial courts have found it inappropriate to grant summary judgment in will contests involving undue influence. Hall supports this theory through a characterization of undue influence: "As a rule undue influence is not proclaimed from the housetop, but is hidden like a candle beneath a bushel and concealed like fraud and deception, only appearing through carelessness and unguarded openings, but ever present and potential." *Coldwell v. Coldwell,* 228 S.W. 95, 102 (Mo. 1920). Hall explains that cross-examination has long been an important tool in removing or exposing openings in the bushels that hide the flames of undue influence and that by granting summary judgment, the opportunity for cross-examination is denied. Lastly, Hall argues that summary judgment results in a "trial by affidavits" and is inappropriate for a will contest involving undue influence. See *Richards v. Bryan,* 19 Kan. App. 2d 950, Syl. ¶ 1, 879 P.2d 638 (1994).

We agree with proponents and find it is a well-established principle that summary judgment is available to plaintiffs and defendants in all forms and kinds of civil matters. K.S.A. 60-256 does not state any type of civil matter that is precluded from summary judgment. However, the district court is still required to make the proper findings in order to grant summary judgment and is subject to the well-founded principles for entering it. We look with favor upon the numerous cases from other states cited by proponents holding that summary judgment can be granted when a will is attacked on the ground of the testator's lack of mental capacity or the presence of undue influence if the will contestants fail to support their opposition to the summary judgment motion with sufficient facts showing there was a genuine issue for trial. See *In re Estate of Sherer,* 10 Ariz. App. 31, 455 P.2d 480 (1969); *Estate of Niquette,* 264 Cal. App. 2d 976, 71 Cal. Rptr. 83 (1968); *Glenn v. Mann,* 234 Ga. 194, 214 S.E.2d 911 (1975); *Boone v. Estate of Nelson,* 264 N.W.2d 881 (N.D. 1978); *In re Wilson's Estate,* 399 P.2d 1008 (Wyo. 1965).

We make specific mention of *In re Wilson's Estate.* In *Wilson,* the court affirmed the trial court's granting of summary judgment, thus denying probate of an instrument offered as a holographic will

and allowing the probate of an attested will and codicil. On appeal, the petitioner argued that since there was a dispute as to undue influence, the trial court was precluded from entering summary judgment. The court extensively discussed the granting of a summary judgment in this situation:

"Considerations of the trial court, on a motion for summary judgment, go beyond the pleadings, and the mere assertion of a claim such as undue influence is not sufficient to prevent entry of summary judgment. We have consistently held that allegations of a complaint are not sufficient to show the existence of a genuine issue of fact, where the alleged basis for relief is challenged by statements of fact in affidavits and other forms of evidence in support of a motion for summary judgment. Lieuallen v. Northern Utilities Company, Wyo., 368 P.2d 949, 951; Hinkle v. Siltamaki, Wyo., 361 P.2d 37, 37-38, 41.

"As pointed out in Lieuallen, if allegations of the complaints are controverted by affidavits and other evidence tending to show the allegations are not true, it thereupon becomes incumbent upon plaintiff to set forth 'specific facts' in opposition, if plaintiff's contention (or allegations of the complaint) are to remain a genuine issue of fact for trial. Rule 56(e), W.R.C.P.

"In the case at bar petitioner continues to insist that attorney William D. Redle had opportunity to influence the testatrix; that testatrix was susceptible to being influenced; and that undue influence could be 'inferred' from the provisions of the will itself.

"We fail to find anything in the will admitted to probate from which undue influence could be inferred. As we said in In re Draper's Estate, Wyo., 374 P.2d 425, 431-32, it is not sufficient to show that a party benefited by a will had the motive and the opportunity to exert undue influence; but there must be evidence that *he did exert it* and did so control the actions of the testator that the instrument is not really the will of the testator.

"Not only did contestant fail to come forward, in connection with the motion for summary judgment, with affidavits, testimony or other evidence tending to show *specific facts* relative to actions on the part of Redle which would constitute undue influence—or from which undue influence could be inferred—but even now there is no suggestion of anything which Redle did toward the testatrix which would constitute evidence that he did in fact exert undue influence upon testatrix." 399 P.2d 1009-10.

Similarly in *Glenn v. Mann*, 234 Ga. 194, the Georgia Supreme Court affirmed the Superior Court's grant of summary judgment to proponents of a will where allegations of undue influence were based on no facts other than the closeness of the relationship between the testator and a proponent, who was a beneficiary under the will. The court explained the evidence presented by the con-

testant showed the two beneficiaries had the opportunity to exercise or to attempt to exercise undue influence on the testatrix at the time the will was signed. However, in upholding summary judgment, the court ruled there was no evidence demonstrating they did in fact exercise undue influence. Thus, the court found no issue which would necessitate a trial. 234 Ga. at 203.

The district court in the present case stated in its letter opinion to counsel that the case of *Crooks v. Green*, 12 Kan. App. 2d 62, seemed most analogous to the present case.

"The plain language of K.S.A. 60-256(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." 12 Kan. App. 2d 62, Syl. ¶ 2.

We therefore find that in probate matters similar to those presently before the court, summary judgment is appropriate when the proper finding is made by the district court. Under the likes of *In re Wilson's Estate*, 399 P.2d 1008, when a will is attacked on the grounds of undue influence, summary judgment can be granted when the will contestants fail to support their opposition to the summary judgment motion with sufficient facts showing there was a genuine issue for trial.

We do note the case cited at oral argument, *Matter of Fuller*, 45 Misc. 2d 353, 256 N.Y.S.2d 860 (1965), which seems to throw doubt on the ability of a trial court to grant summary judgment on the issue of undue influence in a will contest. However, more recent New York cases, *Matter of McGurty*, 151 Misc. 2d 42, 571 N.Y.S.2d 848 (1990), and *Matter of Bartel*, 161 Misc. 2d 455, 613 N.Y.S.2d 798 (1994), acknowledge summary judgment may be appropriate if there are adequate facts to support it.

Hall argues the district court erred in granting summary judgment because reasonable minds could differ as to the conclusions

on the issue of undue influence presented in the record. Specifically, Hall states the record contains evidence that proponents had a confidential relationship with Brodbeck and that suspicious circumstances existed surrounding the execution of the 1992 will and codicil.

Proponents counter that Hall failed to make a sufficient showing that Brodbeck was subject to undue influence or under insane delusions and that, as a matter of law, the district court correctly entered summary judgment in their favor.

Our review of a district court's granting of summary judgment is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c). The trial court is required to resolve all facts and inferences which may be reasonably drawn from the evidence in favor of the party against whom summary judgment is sought. On appeal, we apply the same rule, and where we find that reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. See *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994).

In complying with the above-cited principles, proponents had the initial burden of establishing there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. In *In re Estate of Sherer*, 10 Ariz. App. 31, the court found that the proponent of the will satisfied this burden by filing an affidavit denying any undue influence on her part, as well as affidavits from the attorney who drafted the will and a witness to the will. Applying *Sherer* to the present case, proponents satisfied their initial burden of establishing that Brodbeck was not under any undue influence or insane delusions when she executed the 1992 will, by submitting sworn affidavits from numerous people.

We believe the affidavit from Robert Lytle, Brodbeck's attorney for 30 years, carries much weight in this case. Lytle prepared the 1988 will, the 1992 will, and the codicil. Lytle stated Brodbeck was of sound mind and mentally sharp when she executed the 1992

will, and she related to him that Hart, his wife, and children were just like children to her and James was a special friend. She wanted them to share her property when she died. Lytle stated neither Hart nor James were aware they had been named in Brodbeck's will.

Proponents also submitted affidavits from James, Hart, Brodbeck's treating physician, her oncologist, her pastor, and other close friends and associates, all of whom attested to her testamentary capacity and the lack of any undue influence exerted by James or Hart.

Hall correctly points out that a summary judgment proceeding should not be a "trial by affidavits" and that the parties must be afforded a trial when there is a good faith dispute over the facts. See *Richards*, 19 Kan. App. 2d 950, Syl. ¶ 1. See also *In re Estate of Sherer*, 10 Ariz. App. at 37. However, a party opposing a motion for summary judgment cannot put forth mere allegations. K.S.A. 60-256(e) provides that when a moving party has supported its motion for summary judgment, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. See *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 863 P.2d 355 (1992). Additionally, a party cannot evade summary judgment on the mere hope that something may develop at the trial. See *Essmiller v. Southwestern Bell Tel. Co.*, 215 Kan. 74, 77, 524 P.2d 767 (1974); *Gray v. Ray Gill, Frontier Industries, Inc.*, 208 Kan. 95, Syl. ¶ 1, 490 P.2d 615 (1971); *Meyer, Executor v. Benelli*, 197 Kan. 98, Syl. ¶ 1, 415 P.2d 415 (1966). Therefore, we are concerned with the issue of whether Hall set forth specific facts demonstrating there was a genuine issue of fact requiring a trial.

Hall relies heavily on *In Re Estate of Bennett*, 19 Kan. App. 2d 154, 165, 865 P.2d 1062 (1993). *Bennett* established a two-prong test to determine whether undue influence was exerted over a decedent. Under the first prong, it must be shown that the person who is alleged to have exerted the undue influence was in a confidential and fiduciary relationship with the decedent. 19 Kan. App. 2d at 165. The second prong concerns the existence of suspicious

circumstances to raise questions with the testamentary disposition. 19 Kan. App. 2d at 169.

Hall argues that reasonable minds could differ as to whether a confidential relationship existed in this case and therefore summary judgment was improper. Kansas case law has been reluctant to provide an express definition of "confidential relationship" because of the necessity of deciding each set of facts on a case-by-case basis. The court in *Brown v. Foulks*, 232 Kan. 424, 430-31, 657 P.2d 501 (1983), explained:

"The term 'fiduciary relation' has reference to any relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party. In *Denison State Bank v. Madeira*, 230 Kan. 684, 640 P.2d 1235 (1982), it was held that whether or not a confidential or fiduciary relationship exists depends on the facts and circumstances of each individual case."

Additionally, *Bennett* also provided that the question of whether a fiduciary or confidential relationship exists is a question of fact. The court in *Olson v. Harshman*, 233 Kan. 1055, 1057, 668 P.2d 147 (1983), expressed the same sentiment:

" 'The existence or non-existence of a confidential or fiduciary relationship is an evidentiary question or finding of fact which must be determined from the facts in each case; and therefore, the scope of appellate review is to ascertain only whether there is substantial competent evidence to support the finding of the trial court. [Citation omitted.]'

"In passing on a trial court's determination of the existence or nonexistence of a fiduciary or confidential relationship, an appellate court is required to consider the evidence in its most favorable aspect in relation to the party who prevailed in the court below, [Citations omitted.]"

The trial court in *Bennett* held that the beneficiary and the testatrix did not have a confidential and fiduciary relationship. Although the court found that the beneficiary came to visit the testatrix every day, the court stated that she was only looking after the testatrix's personal care. The beneficiary also supervised the nursing care and saw to the purchase of food and other household items. Hall directs the court's attention to the fact that although the *Bennett* court affirmed the trial court's finding of no confidential relationship because it was supported by substantial competent

evidence, the court questioned whether it would have made the same factual findings had it been the finder of fact. 19 Kan. App. 2d at 168-69.

In arguing that she presented sufficient evidence to the district court to avoid summary judgment, Hall relies on the court's statement in *Bennett* that despite its ruling, the court believed there was evidence to support a finding that the beneficiary was in a confidential and fiduciary relationship with the testatrix. 19 Kan. App. 2d at 168. Hall argues that *Bennett* supports her claim that she should survive the motion for summary judgment because there are facts demonstrating the existence of a confidential relationship. First, Brodbeck's health was failing. Second, James had durable power of attorney for Brodbeck. Third, Brodbeck entrusted Hart with her car, and Hart drove her to do errands and took her to appointments. James even accompanied Brodbeck to Houston for medical treatments. Hall correctly argues that these acts could be viewed as those of kindness, but in terms of preventing summary judgment, they could also be characterized as in the nature of trust and reliance and therefore establish a confidential relationship. We find the close friendship and trust attested to by James and Hart was sufficient evidence of the existence of a confidential relationship.

Our finding that a confidential relationship might well have existed in this case does not require our reversal of the trial court's grant of summary judgment unless Hall can establish that suspicious circumstances existed when Brodbeck executed her 1992 will. Hall presented the trial court with 14 alleged "suspicious circumstances." In granting the motion for summary judgment, it is safe to assume the district court either did not find the circumstances suspicious or found that Hall failed to provide adequate proof of the suspicious circumstances.

This court recently discussed the terms "suspicious circumstances" in *Bennett*:

"We have no Kansas decisions defining the term 'suspicious circumstances.' We think the absence of a specific definition of that term is wise and appropriate. What may appear as 'suspicious' under one set of facts may be considered normal under another. For instance, ordinarily it would be considered suspicious for a

testator or testatrix to disinherit his or her natural born children and leave the estate to others. Although this would be considered suspicious in most cases, there are certainly factual circumstances where such a disposition would be expected and not at all suspicious. It may ordinarily be 'suspicious' to omit any provisions for family members and leave the estate to charity. However, there are factual circumstances in which this is not suspicious and may be normal and expected. Our Supreme Court has indicated in *Brown v. Foulks*, 232 Kan. 424, Syl. ¶ 2, that it would not state an exact definition of a confidential or fiduciary relationship. Its reasoning was that the existence of that relationship depends upon the facts and circumstances of each individual case. For the same reason, we decline to state a definition of the term 'suspicious circumstances.' The question of whether suspicious circumstances exist must necessarily depend on the facts and circumstances of each individual case.

"The question of whether suspicious circumstances exist is a question of fact to be determined on a case-by-case basis in the light of the factual background presented." 19 Kan. App. 2d at 170.

Hall discusses several of the suspicious circumstances raised with the district court that allegedly should have prevented summary judgment. Although we once again recognize that the issue is a factual question for the trier of fact, we will uphold the granting of summary judgment if Hall fails to support her opposition to the motion with sufficient facts showing that there was a genuine issue for trial. See *In re Wilson's Estate*, 399 P.2d 1008. Among the suspicious circumstances Hall alleged to exist are the following:

(1) Brodbeck changed the beneficiaries from blood relatives (her niece and great-nephew) to nonrelatives (her apartment complex manager and her hairdresser). Hall argues such a change was not on its face justified and, under the language of *Bennett*, a change such as this would be considered suspicious in most cases;

(2) The appearance of James' handwriting regarding a $500 loan to James in Brodbeck's check register is suspicious, according to Hall;

(3) The beneficiaries on a number of Brodbeck's bank accounts were changed to proponents. Hall claims some of these accounts were held at banks Brodbeck could not have reached without the assistance of James or Hart, who functioned as Brodbeck's escorts during the relevant time period in this case;

(4) Brodbeck was being treated with numerous medications when she executed the 1992 will, one of which was Halcion. In her

motion opposing summary judgment, Hall submitted the affidavit of Dr. Curtis Klaassen, a toxicologist with the University of Kansas Medical Center, who stated that elderly patients who use Halcion sometimes develop hostilities toward long-time friends and relatives and other forms of paranoia. It was Dr. Klaassen's opinion that Halcion was a factor in Brodbeck's adverse feelings toward Hall and Lindsey and that the drug would have made her susceptible to the influence of James and Hart and in all probability was a factor in Brodbeck executing her 1992 will. Hall argues the presence of Halcion in this case was suspicious and also raised questions as to Brodbeck's capacity during the time she executed the 1992 will;

(5) The timing of the execution of the 1992 will was shortly after Brodbeck was diagnosed with eye cancer; and

(6) James showed Brodbeck a letter, dated September 21, 1993, written from Hall to James questioning James' intentions with Brodbeck. Hall claims this would appear to be an attempt to disturb Brodbeck's peace of mind. We note the suspicious nature of this act had no bearing on Brodbeck's feelings for Hall when she executed her new will in 1992, as the changes occurred some two years before Brodbeck ever saw the letter.

Proponents argue that their actions did not rise to the level of undue influence and the trial court correctly entered summary judgment in their favor. They state it is Hall's impressions, not any factual basis, which support her claims such as: (1) James and Hart attempting to make themselves indispensable, (2) Brodbeck being vain about her appearance and Hart, her hairdresser, being in a position to control her, and (3) during one of Hall's visits, Brodbeck seeming to be distant, hostile, withdrawn, and being controlled by James. Proponents argue that Hall filed a torrent of papers containing unsupported inferences, innuendos, half-truths, personal attacks, and distortions, but she failed to state any specific factual contentions that would establish a material fact.

Proponents would have us utilize our standard of review for immaterial facts. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judg-

ment, the facts subject to the dispute must be material to the conclusive issues in the case. *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995). The court in *Seabourn v. Coronado Area Council, B.S.A.*, 257 Kan. 178, 189, 891 P.2d 385 (1995), addressed what facts are material:

" '[A]n issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issues does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact.' [Citation omitted.]"

Proponents argue that Hall fails to provide proof of any material facts that Brodbeck did not have testamentary capacity or was unduly influenced. They contend the 40 pages of facts in Hall's motion opposing summary judgment are immaterial and do not preclude summary judgment. They cite facts such as Hall's dispute as to how long Brodbeck's pastor had served in that capacity and Hall's attack on Lytle's integrity. They submit the only influence shown in this case was friendship and kindness, and under cases such as *In re Estate of Ziegelmeier*, 224 Kan. 617, 622, 585 P.2d 974 (1978), this is not undue influence. The court in *In re Estate of Robinson*, 231 Kan. 300, 307, 644 P.2d 420 (1982) stated that "lawful influence, such as that arising from legitimate family or social relations, must be allowed to produce its natural results, even in influencing last wills."

Summed up, Hall's argument is that James and Hart had the desire for Brodbeck's property and the ability and opportunity to unduly influence her. Is that sufficient to reverse the finding of the trial court that there was no showing of undue influence? We do not believe it is. "Power, opportunity, and purpose to exercise undue influence, or possibility, conjecture, surmise and suspicion that undue influence has induced a will, alone cannot authorize the inference that such influence has in fact been exercised. [Citation omitted.]" *In re Estate of Millar*, 167 Kan. 455, 465, 207 P.2d 483 (1949). The court in *In re Estate of Hall*, 165 Kan. 465, 470, 195 P.2d 612 (1948), recognized the same requirement of some evidence that undue influence had actually been exercised and also explained the nature of this type of influence: "The test of undue

influence, sufficient to destroy a will, is that it must amount to such coercion, compulsion and restraint as to destroy the testator's free agency, and by overcoming his power of resistance, obliges or causes him to adopt the will of another rather than exercise his own."

It was not sufficient for Hall to merely show circumstances which might be consistent with the exercise of undue influence and that Brodbeck and proponents shared a close personal relationship. Influence gained by kindness, gratitude, or affection will not be regarded as "undue" if no imposition or fraud is practiced. Hall has failed to show any evidence that the alleged undue influence overpowered Brodbeck's mind and wore down her volition at the time the 1992 will or subsequent codicil was made or at any other time. Here, the facts point to no more than general influence which, if not brought to bear upon the testamentary act, however controlling, is not undue influence that will afford grounds for setting aside the will of a person of sound mind.

While a confidential relationship may well have existed between proponents and Brodbeck, any suggestion that proponents were in any manner active or participated in the preparation or execution of the will or that they received an undue benefit therefrom is absent from the record. There is no showing they had any knowledge of the terms of either the prior will or the one offered for probate before its execution, or that they coerced, intimidated, dominated, or in any way controlled Brodbeck's mind in the preparation or execution of her will.

The issues of testamentary capacity and the presence of insane delusions have also been raised. Proponents submit Hall did not raise the issue of testamentary capacity with the trial court and therefore is prohibited from raising it on appeal. See *University of Kansas v. Department of Human Resources*, 20 Kan. App. 2d 354, 356, 887 P.2d 1147 (1995). Hall stated in her defenses to the petition for probate that Brodbeck was under an "insane delusion that Shirley Hall no longer loved her." We find both issues were implicitly discussed at the trial level and are properly before this court.

The law defining "testamentary capacity" in Kansas is clear:

"It is the established rule in Kansas, the deceased possesses testamentary capacity if, on the date he executes the instrument which determines the manner in which the property will be disposed after death, he knows and understands the nature and extent of that property, has an intelligent understanding concerning the disposition he desires to make of it, realizes who his relatives are and the natural objects of his bounty, and comprehends the nature of the claims of those whom he desires to include and exclude in and from participation in his worldly effects after he has no further need for them. [Citation omitted.]" *In re Estate of Ziegelmeier*, 224 Kan. at 621.

See *In re Estate of Raney*, 247 Kan. 359, 367, 799 P.2d 986 (1990).

Hall argues the presence of Halcion in this case raised a factual issue of Brodbeck's capacity to understand who her relatives were and the natural objects of her bounty. Furthermore, Hall argues Brodbeck's use of Halcion created an issue regarding insane delusions, specifically her hostility towards relatives where the hostility had no basis in fact.

The affidavits submitted by proponents in this case clearly contradict Hall's allegations. The affidavits stated, among other things, that Brodbeck was extremely strong-willed, of sound mind, and capable of understanding the nature and extent of her property. Dr. Richard Mundis, Brodbeck's oncologist, although meeting her only one time in August 1993, stated that Brodbeck was of sound mind even while taking her prescribed pain medications. Lytle also stated in his affidavit that when Brodbeck signed the 1992 will, she was of sound mind, suffered under no influence from anyone, and made her own independent decision as to the beneficiaries of her property.

The meaning of insane delusion, in its legal sense, is a belief in things impossible, or a belief in things possible but so improbable under the surrounding circumstances that no person of sound mind would give them credence. An insane delusion is a belief which has no basis in fact or reason. In order to be a basis for avoiding a will, a delusion must be an insane delusion and the will must be a *product* of that delusion. *In re Estate of Carothers*, 220 Kan. 437, Syl. ¶¶ 1-2, 552 P.2d 1354 (1976). See *In re Estate of Millar*, 167 Kan. at 459-60. Even if Brodbeck was mistaken in her belief that Hall no longer loved her, such a belief is not an insane delusion. *Millar* explains that "[i]f there are any facts, however little eviden-

tial force they may possess, upon which testator may in reason have based his belief, it will not be an insane delusion." 167 Kan. at 459. Furthermore, the court in *Akins v. Akins*, 109 Kan. 453, 456, 199 Pac. 922 (1921), recognized that a mistaken belief that one has been wronged by another is a very common frailty of humanity and is not necessarily an insane delusion.

Hall directs the court's attention to a couple of facts she contends demonstrate the effect of Halcion on Brodbeck. Lindsey submitted an affidavit on behalf of Hall detailing her observation of Brodbeck after January 1992. Lindsey, a registered nurse, stated that Brodbeck had been taking Halcion in January 1992, and since that time and up until her death, Lindsey felt that Brodbeck was very distant and had stopped calling in emergencies. Lindsey also stated she had been Brodbeck's friend for 45 years and she was surprised when Brodbeck changed her power of attorney and will. However, she apparently did not observe any overbearing of Brodbeck's will, a lack of testamentary capacity, or insane delusion.

Dr. Klaassen's affidavit stated his belief that in all probability, based on his observation of the facts in this case and his medical background, Halcion was a factor in Brodbeck's hostility towards Hall and Lindsey and a factor in her writing the 1992 will. However, this opinion is only speculation and is not based on any contact between the doctor and Brodbeck.

Inasmuch as no genuine issue as to any material fact existed, the proceeding was in proper posture for disposition by summary judgment. We find that although James and Hart were in a situation where they could exert undue influence, that Brodbeck may have been mistaken in her relationship with Hall or Lindsey, and that the effects of Halcion are uncertain, Hall presented no evidence that these factors actually resulted in or contributed to Brodbeck's execution of the 1992 will.

Finally, Hall argues the district court erred in directing counsel for proponents to prepare the summary judgment journal entry. Proponents contend that Hall waived this argument by failing to object at the trial court level.

Hall argues that Kansas Supreme Court Rule 165 (1995 Kan. Ct. R. Annot. 171) requires that in all contested matters submitted

to a judge without a jury, including motions for summary judgment, the judge shall state the controlling facts required by K.S.A. 60-252 and the legal principles controlling the decision. Hall cites a quote from *In re Marriage of Case*, 18 Kan. App. 2d 457, 464, 856 P.2d 169 (1993): "We note that Supreme Court Rule 165 . . . requires a *judge*, in all contested matters, to state the controlling facts and the legal principles controlling the decision. These requirements are mandatory under both K.S.A. 60-252 and Supreme Court Rule 165." Therefore, Hall argues the district court erred by allegedly failing to meet its responsibilities.

We are not persuaded by Hall's arguments. *Case* is distinguishable because there was a complete absence of a journal entry stating the findings of fact and conclusions of law. This court reversed in *Case* because we could not discern from the record the basis for the administrative hearing officer's order reducing the amount of child support, nor was there any writing containing the basis by which the district court denied judicial review. 18 Kan. App. 2d at 464. Here, we have a journal entry that was signed by the district court judge.

Both parties agree that the purpose of requiring the judge, not the parties, to set out the controlling facts and law in the summary judgment journal entry is to permit meaningful appellate review. See *Baker University v. K.S.C. of Pittsburg*, 222 Kan. 245, 254, 564 P.2d 472 (1977). Hall argues that requiring one of the parties of the lawsuit to prepare the journal entry frustrates this purpose by allowing for a slanted version of the proceedings for the appellate record. Addressing Hall's argument, proponents point out that Supreme Court Rule 165 does not expressly prohibit the judge from directing a party to draft the controlling facts and principles for the judge to consider and adopt. Therefore, proponents contend, because the district court adopted the summary judgment journal entry they prepared, and it thus clearly sets forth the reason for the court's decision and the standards and law that governed the court in its determination.

We recognize the persuasive authority cited by Hall criticizing a trial court's decision to have a party to the lawsuit draft the findings of fact and conclusions of law. But, although a better practice

would be to either have the district court prepare its own findings of fact and conclusions of law or have all parties jointly draft the journal entry, we do not believe the district court's actions should result in a remand in this case. We appreciate the judicial economy in having parties draft proposed summary judgment journal entries and then submitting them for the district court's approval and adoption if they are consistent with the court's findings. We also recognize that Hall had a remedy in K.S.A. 60-252(b) to file a motion to amend the journal entry and failed to take advantage of it.

We note proponents have raised arguments concerning Hall's failure to comply with Supreme Court Rule 141 (1995 Kan. Ct. R. Annot. 160). This rule requires the party opposing a summary judgment motion to state in corresponding paragraphs whether each factual contention is controverted and a concise statement of any conflicting testimony or evidence. The district court did not utilize Hall's failure to comply with Rule 141 to hold that certain facts were uncontroverted, as would be the ordinary remedy in such a situation. Therefore, since the district court took no action under Rule 141, there is no reason to address it on appeal.

Affirmed.