(990 P.2d 155)

No. 80,831

SEAMAN UNIFIED SCHOOL DISTRICT NO. 345, *Appellee*, v. KANSAS COMMISSION ON HUMAN RIGHTS and DONALD L. REED, *Appellants*.

Opinion filed October 1, 1999.

*Barbara Scott Girard*, of the Kansas Human Rights Commission, for appellants.

*Robert D. Hecht* and *Deborah L. Hughes*, of Scott, Quinlan & Hecht, of Topeka, for appellee.

*Lori A. Davis* and *Sherry C. Diel*, of Kansas Advocacy & Protective Services, of Topeka, for *amicus curiae* the Kansas Advocacy & Protective Services, Inc.

*Terry Beck*, of Topeka, for appellant Donald L. Reed.

Before RULON, P.J., GREEN, J., and BARRY A. BENNINGTON, District Judge, assigned.

RULON, J.: Defendants, the Kansas Human Rights Commission (KHRC) and Donald Reed, appeal from an order of the district court reversing the KHRC's determination that Seaman Unified School District No. 345 (USD 345) discriminated against its employee, Reed, based upon his disability under the Kansas Acts Against Discrimination (KAAD), K.S.A. 44-1001 *et seq.* We affirm.

Defendant Reed has a history of insulin dependent diabetes beginning in childhood. He controls his diabetes by daily insulin injections, proper diet, and periodic checkups with his physician. Reed was hired by U.S.D. 345 in February 1990 as a night custodian. When hired, Reed was being treated for diabetic retinopathy, a disorder which occasionally caused the blood vessels in Reed's retinas to hemorrhage. Reed's corrected vision was 20/20 in his right eye and 20/70 in his left eye.

Reed eventually was referred to Dr. Kovarick for a vitrectomy, which is a surgical procedure to remove blood and vitreous scar tissue from the eye. Kovarick placed Reed on postoperative restrictions against stooping, straining, and lifting and to remain in a semi-upright position for approximately 2 weeks. Reed started back to work on February 15, 1990, but the next day took sick leave without pay through March 6, 1990. Additional surgery was performed with similar restrictions. Dr. Kovarick ceased treatment in April 1990, and no limitations were placed on Reed's activity. However, Reed was concerned that the lifting he would be doing during the summer would affect his eyes and requested Dr. Penzlar, his physician, to write a letter limiting his lifting. Penzlar believed it was not medically proven that lifting could cause hemorrhage but could not state it was absolutely impossible. Penzlar provided a letter

setting a 25-pound lifting restriction. Eventually, Reed provided the assistant superintendent with this letter.

Subsequently, Reed was terminated. The assistant superintendent testified Reed was terminated because of his lifting restrictions, poor work performance, and falsifying his job application. There was further testimony that a custodian job required unsupervised, heavy lifting.

Reed filed a complaint with the KHRC. A hearing officer issued an initial order, which the KHRC ultimately adopted as its final order, finding USD 345 discriminated against Reed based on his disability. The KHRC denied a motion for reconsideration, and USD 345 filed a petition for judicial review with the district court. Eventually, the district court granted USD 345 summary judgment, and KHRC and Reed appeal.

## SUMMARY JUDGMENT

The defendants argue the district court improperly disposed of this case by summary judgment. However, defendants filed a response to the motion for summary judgment and failed to raise any objection to the motion. Defendants cannot now raise this issue for the first time on appeal. See *Griffen v. Dodge City Cooperative Exchange*, 23 Kan. App. 2d 139, 143, 927 P.2d 958 (1996).

Further, it is well established that summary judgment is available in all forms and kinds of civil matters. K.S.A. 1998 Supp. 60-256 does not state any type of civil matter that is precluded from summary judgment. See *In re Estate of Brodbeck*, 22 Kan. App. 2d 229, 232, 915 P.2d 145, *rev. denied* 260 Kan. 993 (1996). A Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, proceeding is a civil matter and, therefore, summary judgment is appropriate if no genuine issues of material fact exist and the party is entitled to judgment as a matter of law.

Defendants further contend that the district court's findings and conclusions are insufficient. However, defendants failed to object to the sufficiency of the district court's findings of fact and conclusions of law, and the objection will not be considered for the first time on appeal. See *Galindo v. City of Coffeyville*, 256 Kan. 455,

467, 885 P.2d 1246 (1994). Further, the district court issued an extensive memorandum decision and entry of judgment that set forth the controlling facts and legal basis for its decision. The court found no disputed issue of fact existed to establish as a matter of law that Reed was disabled, after viewing all inferences permitted by the evidence in the defendants' favor. Based on the analysis that follows, the district court did not err in granting summary judgment for the plaintiff.

## THE CLAIMED DISABILITY

The United States Supreme Court has recently interpreted provisions in the American with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.* (1994), which prohibit employers from discriminating against individuals on the basis of their disabilities. See *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999); *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 144 L. Ed. 2d 484, 119 S. Ct. 2133 (1999); *Albertsons, Inc. v. Kirkingburg*, 527 U.S. 555, 144 L. Ed. 2d 518, 119 S. Ct. 2162 (1999). The KAAD is modeled after the ADA and, therefore, federal court decisions are persuasive authority. See *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 767, 648 P.2d 234 (1982).

The recent United States Supreme Court cases mentioned above shed light on an area that has caused much conflict among the courts: whether corrective and mitigating measures should be considered in determining whether an individual is disabled. The United States Supreme Court, affirming the 10th Circuit, held that under the plain meaning of the ADA, corrective and mitigating measures should be considered in determining whether an individual is substantially limited in a major life activity. See *Sutton*, 144 L. Ed. 2d at 462. The ADA, as well as the KAAD, defines "disability" as "a physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2)(A) (1994); K.S.A. 44-1001(j)(1). The Equal Employment Opportunity Commission has issued regulations that define these terms. "Physical impairment" is "[a]ny physiological disorder . . . affecting . . . special sense organs." 29 C.F.R. § 1630.2(h)(1) (1998). "Substantially limits" is defined as "[u]nable

to perform a major life activity that the average person in the general population can perform," 29 C.F.R. § 1630.2(j)(1), and "major life activities" are basic activities that the average person in the general population can perform with little or no difficulty such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

For a person to establish a prima facie case of disability discrimination, he or she must prove (1) he or she is a disabled person within the meaning of the KAAD; (2) he or she was able to perform the essential functions of the job with or without reasonable accommodations; and (3) the employer terminated him or her because of his or her disability. See *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1123 (10th Cir. 1995). We conclude the defendant here has not met the definition of disability under 44-1002(j)(1). The defendant testified he was able to control his diabetes with proper diet and monitoring and his physical activities were not limited. There is no evidence that the defendant's diabetes, viewed in its medicated state, substantially limits his major life activity of working. See *Murphy*, 144 L. Ed. 2d at 490.

Disability additionally includes "being regarded as having such an impairment." K.S.A. 44-1002(j)(3). A person can meet this statutory definition if: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. See *Sutton*, 144 L. Ed. 2d at 466. When referring to the major life activity of working, the EEOC defines "substantially limits" as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. See 29 C.F.R. § 1630.2(j)(3)(i). Here, Reed has failed to demonstrate there is a genuine issue of material fact as to whether he is regarded as disabled. Reed was fired from the position of night

custodian because he was unable to perform the unsupervised, heavy lifting that accompanied that position. At most, Reed has shown he is regarded as unable to perform the job of custodian only when that job requires heavy lifting. Reed has put forward no evidence that he is regarded as unable to work in a broad class of jobs. See *Sutton*, 144 L. Ed. 2d at 468. An employer is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job. See *Sutton*, 144 L. Ed. 2d at 467.

The evidence demonstrates that Reed is, at most, regarded as unable to perform only a particular job, not a broad class of jobs. Such is insufficient, as a matter of law, to prove that Reed is regarded as substantially limited in the major life activity of working. See *Sutton*, 144 L. Ed. 2d at 468-69; *Murphy*, 144 L. Ed. 2d at 491-92.

Affirmed.